569 S.E.2d 349

Lynn W. BAZZLE and Burt A. Bazzle, in a representative capacity on behalf of a class and for all others similarly situated, Respondents,

v.

GREEN TREE FINANCIAL CORP. a/k/a Green Tree Acceptance Corporation a/k/a Green Tree Financial Services Corporation n/k/a Conseco Finance, Inc., Appellant.

Daniel B. Lackey, George Buggs, and Florine Buggs, in a representative capacity on behalf of a class and for all others similarly situated, Respondents,

v.

Green Tree Financial Corp., a/k/a Green Tree Financial Services Corp., a/k/a Green Tree Acceptance Corp., n/k/a Conseco Finance, Inc., Appellant.

No. 25523.

Supreme Court of South Carolina.

Heard March 21, 2002.

Decided Aug. 26, 2002.

246

Herbert W. Hamilton, of Kennedy Covington Lobdell & Hickman, L.L.P., of Rock Hill; Wilburn Brewer, Jr. and Robert C. Byrd, of Nexsen Pruet Jacobs Pollard & Robinson, L.L.P., of Charleston; and Alan S. Kaplinsky and Mark J. Levin, of Ballard Spahr Andrews & Ingersoll, L.L.P., of Philadelphia, P.A., all for appellant.

Steven W. Hamm, of Richardson Plowden Carpenter & Robinson, P.A., of Columbia; D. Michael Kelly, Bradford P. Simpson and B. Randall Dong, all of Suggs & Kelly Lawyers, P.A., of Columbia; Mary Leigh Arnold, of Mary Leigh Arnold, P.A., of Mt. Pleasant; Charles L.A. Terreni, of Terreni Law Firm, of Columbia; and T. Alexander Beard, of Beard Law Offices of Mt. Pleasant, all for respondents.

Christopher R. Lipsett, Eric J. Mogilnicki, Christopher J. Mead, all of Wilmer, Cutler & Pickering, of New York City; and John T. Moore, B. Rush Smith, III and Thad H. Westbrook, all of Nelson, Mullins, Riley & Scarborough, L.L.P., of Columbia, all for Amicus Curiae American Bankers Association, American Financial Services Association, Consumer

Bankers Association, South Carolina Bankers Association, and South Carolina Merchants Association, in support of appellant.

John F. Hardaway, of Columbia; and Michael D. Donovan, of Donovan Searles, L.L.C., of Philadelphia, P.A., both for Amicus Curiae National Association of Consumer Advocates, in support of respondents.

Chief Justice TOAL:

Two classes of plaintiffs, represented by Lynn and Burt Bazzle, et. al. ("Bazzles") and by Daniel Lackey, et. al. ("Lackey"), were awarded damages pursuant to their respective class action arbitrations against Green Tree Financial Corporation ("Green Tree") for violations of the South Carolina Consumer Protection Code.[1] Green Tree appeals the arbitrator's [2] awards in both cases, on grounds that class-wide arbitration of the plaintiffs' claims was not authorized by the arbitration agreement.

## FACTUAL/PROCEDURAL BACKGROUND

On February 22, 2001, this Court entered an Order withdrawing Green Tree's appeal from the Court of Appeals. By that order, this Court assumed jurisdiction and consolidated the *Bazzle* and *Lackey* cases for appeal. Although each case proceeded through arbitration independently, resolution of each appeal involves the same novel issue: whether class-wide arbitration is permissible when the arbitration agreement between the parties is silent regarding class actions.

### Bazzle

The Bazzles (like their fellow class members) were approached by Patton General Contracting ("Patton"), a non-exclusive Green Tree dealer, in 1995, to perform home improvements. Patton provided the Bazzles with a Green Tree application for financing. The Green Tree application contained no attorney or insurance agent preference notice. On May 20, 1995, the Bazzles executed a Retail Installment

---

1. S.C.Code Ann. §§ 37–10–102; 37–10–105 (Supp.1997).

2. The same arbitrator heard both cases separately.

Contract and Security Agreement for $15,000 which contained the arbitration clause at issue.[3] The same day the Bazzles executed a number of other documents identifying Green Tree as the lender, including a mortgage stamped with directions to return it to Green Tree once executed. The Bazzles were never given an attorney or insurance preference form and no attorney was involved in the transaction or closing on their behalf.

On March 25, 1997, Lynn and Burt Bazzle commenced an action against Green Tree in the Dorchester County Court of Common Pleas based on Green Tree's alleged violations of the attorney and insurance agent preference provisions of the South Carolina Consumer Protection Code[4] arising out of their home improvement financing agreement with Green Tree.

On April 21, 1997, the Bazzles filed an amended complaint incorporating class allegations and a Motion for Class Certification. A month later, Green Tree filed a Motion for Stay and to Compel Arbitration. On December 5, 1997, the trial court heard both motions. It granted the Motion for Class Certification. After the court granted class certification, Green Tree pursued its Motion to Compel Arbitration, and the trial court granted it.

The trial court issued two separate orders memorializing its rulings on December 5, 1997:(1) an order granting class certification; and (2) an order compelling arbitration. In its order compelling arbitration, the trial court stated that the order applied to the Bazzles and all members of their class who elected to be part of the action. In a supplemental order issued January 7, 1998, the trial court ordered that the class action in arbitration proceed on an opt-out basis.

On January 20, 1998, Green Tree filed a Motion for Reconsideration of the trial court's order granting class certification.

---

**3.** The arbitration clause does not mention class actions in arbitration or otherwise, but Green Tree argues the singular language of the clause stating claims relating to *"this* contract ... will be resolved by binding arbitration by an arbitrator selected by us with the consent of *you"* precludes class-wide arbitration. (emphasis added). Green Tree does not concede that the agreement is "silent."

**4.** S.C.Code Ann. §§ 37–10–102; 37–10–105 (Supp.1997).

After a hearing, the trial court denied Green Tree's Motion for Reconsideration, and Green Tree filed an appeal. On April 28, 1998, the Court of Appeals dismissed Green Tree's appeal on grounds that granting or denying class certification is interlocutory and non-appealable. Green Tree filed a Petition for Rehearing. The Court of Appeals denied rehearing and Green Tree filed a petition for certiorari with this Court. This Court denied Green Tree's petition and remitted the case to the trial court.

On February 24, 1999, the Bazzles filed a Motion to Compel Appointment of an Arbitrator. On May 6, 1999, Green Tree filed a Motion to Dismiss on grounds that the Bazzles were not the proper parties to pursue the claims asserted, as their interests were contrary to the interests of the class members. On May 20, 1999, the trial court heard both motions. The trial court appointed the Honorable Thomas Ervin as arbitrator and declined to hear the Motion to Dismiss for lack of jurisdiction.

All class action proceedings were thereafter administered by the arbitrator, without further involvement of the trial court. The arbitrator handled several motions by the parties before holding the final hearing on May 31, 2000. On July 24, 2000, the arbitrator issued a Final Order and Award, finding Green Tree liable for violating the attorney and insurance preference statute, S.C.Code Ann. § 37–10–102(a). The arbitrator found the remedies for such a violation to be in S.C.Code Ann. § 37–10–105 (Supp.1996 & 1997) and awarded relief to the class of 1,899 individuals in the amount of $10,935,000, and an additional $3,645,500 in attorney's fees and $18,242 in costs.

On July 25, 2000, the Bazzles filed a Motion to Confirm the Award in the trial court. On August 24, 2000, Green Tree filed a Motion to Remand the Award for Amendment and Clarification, an objection to the Motion to Confirm, and a Motion to Vacate the Award. On September 15, 2000, the trial court confirmed the award and denied Green Tree's motions to remand and vacate. Green Tree appealed and this Court assumed jurisdiction to hear the consolidated appeals.

### *Lackey*

Daniel Lackey (and his fellow class members) entered into preprinted consumer installment contracts and security agreements with Green Tree for the purchase of mobile homes. These transactions were secured by real property and were subject to the South Carolina Consumer Protection Code. In each of these transactions, the consumer completed a Green Tree application for financing through a Green Tree dealer. The applications contained no attorney or insurance preference notice and no preference form was provided at any other time during the transaction.

Green Tree, not its dealers, notified the consumer whether credit had been granted or denied. If granted, Green Tree set the terms, including the interest rate, and prepared a mortgage and note. The mortgages were delivered to the consumer through the dealer, but were returned directly to Green Tree. The notes and mortgages were assigned to Green Tree. Green Tree funded the transaction after the consumer reported satisfaction with the set up of the mobile home and then issued checks to the dealer.

On May 28, 1996, Daniel Lackey and George and Florine Buggs commenced a *class* action against Green Tree in the Barnwell County Court of Common Pleas. The Lackey plaintiffs, like the Bazzles, alleged violations of the attorney and insurance preference provisions of the South Carolina Consumer Protection Code.

Green Tree filed its answer and the Lackey plaintiffs proceeded to file a Motion for Class Certification. Green Tree moved to Stay the Matter and to Compel Arbitration. The trial court denied Green Tree's Motion to Compel Arbitration, finding Green Tree's contract was an adhesion contract with an unconscionable and unenforceable arbitration clause. Green Tree appealed and the Court of Appeals reversed. Although the Court of Appeals agreed that the contracts were ones of adhesion, it found that the arbitration clause within them was not unconscionable. *Lackey, et. al. v. Green Tree Fin. Corp.*, 330 S.C. 388, 498 S.E.2d 898 (Ct.App.1998).

Following remand, the parties entered into a Consent Order appointing the Honorable Thomas Ervin as arbitrator. Apparently, the arbitrator raised the issue of class action arbitra-

tion and held a hearing to determine whether a class action could proceed under Green Tree's arbitration clause.[5] The Lackey Plaintiffs claim Green Tree sought a decision by the arbitrator at the hearing that the class action could not proceed in arbitration. Green Tree, however, claims its involvement was limited to vigorous objection that the arbitrator did not have authority to order class arbitration under the Federal Arbitration Act[6] ("FAA") and the arbitration agreement. After a hearing on the matter, the arbitrator issued an order permitting class action arbitration and scheduled a class certification hearing.

On September 22, 1998, Green Tree initiated a declaratory judgment action in federal district court, seeking to enjoin the arbitrator from certifying a class. After a hearing, the district court denied the injunction and dismissed the declaratory judgment action for lack of subject matter jurisdiction.[7]

On November 28, 1998, the arbitrator held the hearing on class certification. Green Tree's counsel was present but refused to participate in the argument of the motion. The arbitrator found the requirements for class certification were met. In December 1998, Green Tree filed an action for Declaratory Judgment and Preliminary Injunction in state court and a Motion to Stay the arbitration proceedings. After a hearing, the trial court denied the stay on the ground it lacked jurisdiction to interfere with the arbitration.[8]

After a hearing in May of 1999, the arbitrator approved a class notice that was sent to the class members on May 12,

---

5. Although the Lackey plaintiffs moved for class certification in the trial court before Green Tree moved to compel arbitration, the trial court never addressed the motion because it refused to compel arbitration. As discussed, its decision was reversed and the matter was remanded for arbitration before the motion to certify the class was ever considered.

6. 9 U.S.C. §§ 1–208 (1994).

7. Significantly, the district court noted that even if it had jurisdiction, it would decline to intervene in the proceeding before the arbitrator as section 4 of the FAA only authorizes a party to petition a federal court when it has been aggrieved by the refusal of another to arbitrate.

8. The trial court noted in its order that it found class actions and arbitration to be compatible.

1999. On January 28, 2000, the arbitrator held a pre-trial conference. At the conference, the parties entered into a Consent Agreement redefining the Lackey class to include all mobile home transactions and placing all home improvement class members in the Bazzle class.

The arbitrator heard the Lackey claims on March 6–8, 2000. Green Tree participated, offering witnesses and evidence. At the conclusion, the arbitrator ruled orally that Green Tree had violated the attorney and insurance agent preference requirements of the Consumer Protection Code. The arbitrator awarded $9,200,000 for violation of the attorney and insurance preference statute, and an additional $3,066,666 in attorney's fees and $18,252 in costs. On May 31, 2000, the same arbitrator heard the Bazzle home improvement claims and again held Green Tree violated the attorney and insurance preference provisions. At this hearing, the arbitrator established the procedures for Green Tree to address its offset claims in both *Bazzle* and *Lackey.*

On July 24, 2001, the Lackey Plaintiffs filed a motion to confirm the award in trial court. In response, Green Tree filed a Motion to Remand and a Motion to Vacate the award. In December 2001, the trial court confirmed the award. Green Tree appealed and this Court withdrew the appeal from the Court of Appeals and assumed jurisdiction to hear the consolidated *Bazzle* and *Lackey* appeals.

Although the *Bazzle* and *Lackey* cases involve financing for different purposes, Green Tree structured and conducted the transactions in the same manner. The consumers in both classes were bound to arbitration by the same clause which appeared in their Retail Sales Agreements. Procedurally, however, the two cases differ in how class certification was granted. As discussed, in *Bazzle,* the trial court certified the class and then granted Green Tree's Motion to Compel Arbitration. The Lackey suit was filed as a class action in trial court, but arbitration was compelled before the motion to certify the class was considered although the Lackey plaintiffs did make a Motion to Certify the Class. Thus, the arbitrator authorized class certification within the arbitration. The cases have been consolidated and Green Tree appeals the following issues:

I. Did Green Tree waive its ability to object to class-wide arbitration in *Bazzle* and *Lackey* by manifesting consent to the class-wide arbitration?

II. Did the trial court in *Bazzle* and the arbitrator in *Lackey* have contractual or legal authority to authorize the respective arbitrations to proceed on a class action basis?

III. If so, were the due process rights of the absent class members sufficiently protected?

LAW/ANALYSIS

## I. Waiver

■ The Bazzle and Lackey plaintiffs argue this Court can avoid addressing the broad issue of whether class-wide arbitrations were permissible by affirming on the alternate ground that Green Tree manifested consent to class-wide arbitration and may not now object to it. We are not convinced by this waiver argument.

■ The courts of this state have recognized that a party cannot complain when it receives the relief for which it has asked. *See McKissick v. J.F. Cleckley & Company,* 325 S.C. 327, 479 S.E.2d 67 S.E.2d (Ct.App.1996); *Estes v. Grav,* 319 S.C. 551, 462 S.E.2d 561 (Ct.App.1995). Specifically, a party that by its conduct consents to arbitration of a dispute waives any subsequent judicial challenge to its arbitrability. *See Rock–Tenn Co. v. United Paperworkers Int'l Union,* 184 F.3d 330 (4th Cir.1999). Although this is an accurate statement of the law, Green Tree did not consent to class-wide arbitration by defending itself in the arbitration. As discussed, Green Tree protested class-wide arbitration vigorously in both cases, receiving adverse rulings every time, before defending itself on the merits.

In *Bazzle,* Green Tree requested arbitration and received it after the motion to certify the class was granted by the trial court. Even after the trial court certified the *Bazzle* class, Green Tree continued to push for arbitration, and the trial court granted Green Tree's Motion to Compel arbitration. The Bazzles therefore contend that Green Tree got what it asked for and cannot now complain that the court abused its

discretion by granting the relief it requested. Although Green Tree did object to the class-wide arbitration before the arbitrator, the Bazzles contend it waived its ability to object by manifesting consent to proceed through some of its subsequent actions. For example, the Bazzles point to Green Tree's Motion to Decertify the class before the arbitrator on substantive grounds as evidence that Green Tree manifested consent to the arbitrator's authority to certify or decertify the class. The Bazzles claim that by placing the decertification issue squarely before the arbitrator, Green Tree manifested acceptance of the arbitral forum as sufficient to resolve the issue.

In *Lackey*, the plaintiffs argue similarly that Green Tree waived its right to object to class-wide arbitration by moving to compel arbitration when it knew of the class allegations being asserted. They argue that moving to compel arbitration without insisting that the trial court address the class certification motion manifested consent for the arbitrator to decide the certification issue. The Lackey plaintiffs assert that Green Tree did not object with motions and stays until after the arbitrator ruled against Green Tree on the general issue of whether this action could possibly proceed as a class-wide arbitration. The Lackey plaintiffs claim Green Tree was obligated to force the trial court to decide the Lackey plaintiffs' motion before it granted Green Tree's Motion to Compel because Green Tree was aware of the class allegations and knew the arbitrator would decide the issue if the trial court did not.

We are not persuaded by the plaintiffs arguments for waiver in *Bazzle* or *Lackey*. In *Bazzle*, Green Tree argued against the Motion to Certify before the trial court, lost, and then filed a Motion for Reconsideration of the issue. The Motion for Reconsideration was denied and Green Tree appealed the denial all the way to this Court. In *Lackey*, although Green Tree did not insist the trial court decide the issue before arbitration was compelled, it objected vigorously to the possibility of class certification at the first hearing on the matter before the arbitrator and filed actions to enjoin class certification in federal and state court. Green Tree's motions in both cases were entirely unsuccessful, but, nonethe-

less, manifested Green Tree's objection to class-wide arbitration sufficiently to counter the plaintiffs' waiver argument.

## II. Class Action Arbitration

In these consolidated cases, Green Tree argues the trial court and the arbitrator failed to enforce Green Tree's arbitration clause in accordance with its terms, in violation of the FAA, when they imposed class-wide arbitration.

The parties do not dispute that the FAA applies to the arbitration agreements in both cases.[9] The arbitration agreements expressly state that they are made pursuant to transactions in interstate commerce and are governed by the FAA. Although they agree the FAA applies, the parties dispute how the FAA impacts the class-wide arbitration question.

The United States Supreme Court has not addressed the FAA's impact on class-wide arbitration, although it was presented with an opportunity to do so in *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).[10] Thus, there is no binding precedent that this Court is obligated follow. Courts in other jurisdictions have addressed the issue, and have taken two different approaches. Several federal circuits have precluded class-wide arbitration when the arbitration agreement is silent based on their interpretation of section 4 of the FAA.[11] Representing the opposing view, the California courts have permitted class-wide arbitration on a case by case basis when the arbitration agreement is silent.[12]

---

9. In a separate action against Green Tree, this Court previously held Green Tree's arbitration clause was governed by the FAA. *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 542 S.E.2d 360 (2001). The same arbitration clause is at issue here.

10. This was an appeal from an opinion of the California Supreme Court in which, among other things, the California Court held class-wide arbitration permissible under state law when the arbitration agreement was silent regarding class action arbitration. *Keating v. Superior Court*, 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192 (1982).

11. This federal approach was first enunciated by the Seventh Circuit in *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269 (7th Cir.1995).

12. The California approach was first enunciated in *Keating v. Superior Court*.

## A. Seventh Circuit Approach

Green Tree urges the Court to adopt the reasoning employed by the Seventh Circuit, holding courts lack authority to order class-wide arbitration under section 4 of the FAA. 9 U.S.C. § 4. Section 4 requires arbitration in "accordance with the terms" of the agreement. If the arbitration agreement in question is silent on the issue, these courts reason that authorizing class-wide arbitration would not be in "accordance with the terms" of the agreement. *See Champ v. Siegel Trading Co., Inc.; McCarthy v. Providential Corp., et. al.,* 1994 WL 387852 (N.D.Cal.); *Gammaro v. Thorp Consumer Discount Co.,* 828 F.Supp. 673 (D.Minn.1993). These courts support their decisions by drawing an analogy between ordering *class-wide* arbitration and ordering *consolidation* in arbitration.[13] *Id.; Med Ctr. Cars, Inc. v. Smith,* 727 So.2d 9 (Ala.1998) (finding the federal authority persuasive and applying the consolidation analogy to class-wide arbitration in Alabama state courts).

In *Champ,* a class action alleging violations of the Commodity Exchange Act, RICO, and other state laws, the Seventh Circuit found "no meaningful basis to distinguish between the failure to provide for consolidated arbitration and class arbitration." *Id.* at 275. Based on this comparison, the *Champ* court adopted "the rationale of several other circuits and [held] that section 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter." *Id.; Boeing; National Cas.; Baesler.* In reaching their decision in the consolidation cases, the various courts placed strict enforcement of the terms of the agreement above the policy favoring expeditious resolution of claims. *Champ.*

Citing a decision by the Second Circuit, the *Champ* court noted that the FAA's overriding goal was to place private arbitrations on the same footing as other contracts negotiated between private parties. *Champ* (citing *United Kingdom v.*

---

**13.** Several federal circuits have refused to order consolidation of arbitration when the agreement is silent regarding consolidation. *See Government of United Kingdom v. Boeing, Co.,* 998 F.2d 68 (2d Cir. 1993); *American Centennial Ins. v. National Cas. Co.,* 951 F.2d 107 (6th Cir.1991); *Baesler v. Continental Grain Co.,* 900 F.2d 1193 (8th Cir. 1990).

*Boeing,* 998 F.2d 68 (2d Cir.1993)). In furtherance of this goal, the Second Circuit held the duty to enforce the agreement as the parties wrote it to be tantamount, regardless of "possible inefficiencies created by such enforcement." *Champ,* 55 F.3d at 275 (citing *Boeing,* 998 F.2d at 72). The *Champ* court, however, failed to discuss whether the arbitration agreement was one of adhesion or was truly *negotiated* by the parties, and failed to discuss the differences between consolidation and class-action on a practical level.

## B. California Approach

The California Supreme Court, on the other hand, did consider whether a trial court could order class-wide arbitration under adhesive but enforceable franchise contracts in *Keating,* 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192, *rev'd in part on other grounds* in *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).[14] The California court concentrated on the negative implications of refusing to allow class-wide arbitration when arbitration has been made mandatory through an adhesion contract:

> If the right to a classwide proceeding could be automatically eliminated in relationships governed by adhesion contracts through the inclusion of a provision for arbitration, the potential for undercutting these class action principles, and for chilling the effective protection of interests common to a group, would be substantial. Arbitration proceedings may well provide certain offsetting advantages through savings of time and expense; but, depending upon the nature of the issues and the evidence to be presented, it is at least doubtful that such advantages could compensate for the unfairness inherent in forcing hundreds or perhaps thousands, [sic] of individuals asserting claims involving common issues of fact and law to litigate them in separate proceedings against a party with vastly superior resources.

*Keating,* 31 Cal.3d at 609, 183 Cal.Rptr. 360, 645 P.2d 1192.

The California Supreme Court, like the Seventh Circuit, drew an analogy between ordering consolidation and class-

---

**14.** The United States Supreme Court declined to reach this issue, finding that the California Supreme Court's decision was based entirely on state law and raised no federal question for them to review (e.g., whether or not the FAA prohibited class-wide arbitration in these circumstances). *Southland,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1.

wide arbitration to support its decision. In 1982, when *Keating* was decided, the Second Circuit permitted consolidation where the agreement was silent. *Compania Espanola de Pet., S.A. v. Nereus Shipping,* 527 F.2d 966 (2d Cir.1975), *cert. denied* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976). The Second Circuit has reversed itself on this issue since Keating, however, and now holds that ordering consolidation when the arbitration agreement is silent violates section 4 of the FAA. *United Kingdom v. Boeing.* Nonetheless, the California court's analysis remains viable; although it drew an analogy between permitting consolidation and class-wide arbitration when the contract is silent, it also distinguished the two, making its case for class-wide arbitration even stronger.

The California court pointed out that consolidated arbitration often involves a "tripartite relationship in which the parties in dispute each have a contract with a third party, but not with each other," as opposed to class-wide arbitrations in which all plaintiffs had a contract directly with the defendant. *Keating,* 31 Cal.3d at 612, 183 Cal.Rptr. 360, 645 P.2d 1192. Highlighting the greater burden likely to result from ordering consolidation, the California court explained:

> Thus, a party may be forced into a coordinated arbitration proceeding in a dispute with a party with whom he has no agreement, before an arbitrator he had no voice in selecting and by a procedure he had not agreed to.
>
> In these respects, an order for classwide arbitration in an adhesion context would call for considerably less intrusion upon the contractual aspects of the relationship.

*Id.* Unlike parties subjected to consolidation, "the members of a class subject to classwide arbitration would all be parties to an agreement with the party against whom their claim is asserted." *Id.* Balancing the potential inequities and inefficiencies against resulting prejudice to the drafting party, the California court held that it was not beyond the court's authority to order class-wide arbitration in the appropriate case. The court thus left the question for the trial court to answer on a case by case basis, in its discretion, upon consideration of certain factors.[15]

---

15. The factors that should be considered include efficiency, equity, and prejudice to the drafting party likely to result from class-wide arbitration. *Keating.*

More recently, the California Court of Appeal for the second district reaffirmed the California Supreme Court's holding in Keating. *Blue Cross v. Superior Court,* 67 Cal.App.4th 42, 78 Cal.Rptr.2d 779 (Cal.App.1998), *cert. denied* 527 U.S. 1003, 119 S.Ct. 2338, 144 L.Ed.2d 235 (1999). The Court of Appeal discussed the rationale employed by the California Supreme Court in Keating extensively, and upheld the court's ruling in Keating on state *and* federal law grounds. *Blue Cross.* Going further than the California Supreme Court, the Court of Appeal addressed the impact of the FAA on this issue, concluding that it does not preclude application of California's class-wide arbitration rule. *Id.*

First, the Court of Appeal held that section 4 of the FAA does not apply to state courts at all. For support, the court cited the legislative history of the FAA and several decisions of the United States Supreme Court. *Id.* (citing *Volt Info. Sciences v. Leland Stanford Jr. University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)) (stating that the Court has never held that sections 3 and 4 of the FAA apply to state courts). The Court of Appeal reasoned that the language of section 4 contemplated a petition before a district court and application of the federal rules of civil procedure. *Id.* at 60, 78 Cal.Rptr.2d 779 (citing *Rosenthal v. Great Western Financial Securities Corp.,* 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (Cal.1996)). The court recognized the FAA would prevail over a state procedural rule if in direct conflict, but found that a state procedure that furthers "the effectuation of the federal law's objectives" would not conflict and should be followed. *Id.* at 61, 78 Cal.Rptr.2d 779 (quoting *Rosenthal,* 14 Cal.4th at 410, 58 Cal.Rptr.2d 875, 926 P.2d 1061). The court concluded that following state precedent allowing class-wide arbitration can further rather than defeat the FAA's goal of enforcing agreements to arbitrate and is, therefore, not preempted by section 4 of the FAA. *Blue Cross.*[16]

---

16. The court also addressed the consolidation argument and drew an analogy to consolidation despite the Second Circuit's reversal of its decision relied upon by the California Supreme Court in *Keating.* The Court of Appeal cited a decision by the First Circuit permitting consolidation where the agreement was silent, finding its reasoning to be more persuasive than those circuits (Second, Fifth, Sixth, and Eleventh) that prohibit consolidation where the agreement is silent. *Blue Cross* (citing *New England Energy Inc. v. Keystone Shipping Co.,* 855 F.2d 1 (1st

## C. Relevant South Carolina Law

This Court has not considered whether or not class-wide arbitration may be ordered when the arbitration agreement is silent. Generally, however, this Court favors arbitration of disputes. *Heffner v. Destiny, Inc.*, 321 S.C. 536, 471 S.E.2d 135 (1995). Further, our courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *See Towles v. United HealthCare Corp.*, 338 S.C. 29, 524 S.E.2d 839 (Ct.App.1999). This Court examined the arbitration clause at issue last year in *Munoz v. Green Tree Financial Corp.*, 343 S.C. 531, 542 S.E.2d 360, (2001). In *Munoz*, this Court held "general principles of state law apply to arbitration clauses governed by the FAA." 343 S.C. at 539, 542 S.E.2d at 364 (2001) (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

Generally, if the terms of a contract are clear and unambiguous, this Court must enforce the contract according to its terms regardless of its wisdom or folly. *Ellis v. Taylor,* 316 S.C. 245, 449 S.E.2d 487 (1994). Ambiguous language in a contract, however, should be construed liberally and interpreted strongly in favor of the non-drafting party. *Myrtle Beach Lumber Co., Inc. v. Willoughby,* 276 S.C. 3, 274 S.E.2d 423 (1981). After all, the drafting party has the greater opportunity to prevent mistakes in meaning. It is responsible for any ambiguity and should be the one to suffer from its shortcomings. *Id.*

The United States Supreme Court has applied this common-law rule of contract construction, construing ambiguous language against the drafting party in a case involving arbitration issues. In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, a suit brought by customers of a securities brokerage firm, the Court permitted an arbitration panel to award punitive damages although the arbitration agreement was silent regarding punitive damages, but contained a choice of law provision which the brokerage firm claimed prohibited the arbitrator from awarding punitive damages. 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). The Court framed the question pre-

---

Cir.1988) *cert. denied* 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989)). The Third Circuit has adopted *Champ* since *Blue Cross* was decided. *Johnson v. West Suburban Bank,* 225 F.3d 366 (3d Cir.2000).

sented in broad terms, asking whether the award of punitive damages was consistent with the FAA's purpose of ensuring arbitration agreements are "enforced according to their terms." *Mastrobuono*, 514 U.S. at 54, 115 S.Ct. at 1214, 131 L.Ed.2d at 82. The Court found the choice of law provision introduced an ambiguity into an agreement that would otherwise permit punitive damage awards. The Court then resolved the ambiguity against the brokerage firm as the drafting party, based on the federal policy favoring arbitration [17] and the common law rule of contract interpretation construing ambiguous language against the drafting party. *Mastrobuono*.

Although this Court has not addressed whether class-wide arbitrations are permissible when the agreement is silent, this Court has considered whether consolidation of arbitration is permissible. In *Episcopal Housing Corp. v. Federal Ins. Co.*, this Court authorized consolidation of the claims of plaintiff (owner of an apartment complex) against an architect and builder absent contractual or statutory authority. 273 S.C. 181, 255 S.E.2d 451 (1979). In sum, this Court held, "[w]hile we recognize that arbitration is a creature of contract, appellant would not be denied its contracted-for right to arbitration; rather the consolidation would provide a logical, expeditious method by which to enforce that right." *Episcopal Housing*, 273 S.C. at 183–84, 255 S.E.2d at 452. Significantly, the Court considered whether the objecting parties had demonstrated any prejudice which would result from consolidated proceedings and found that they had not. *Id.* The Court of Appeals applied *Episcopal Housing's* prejudice analysis in a more recent decision, and this Court has not revisited the issue. *Plaza Development Services v. Joe Harden Builder, Inc.*, 294 S.C. 430, 365 S.E.2d 231 (Ct.App.1988).

### D. Application to *Bazzle* and *Lackey*

As a preliminary matter, we find Green Tree's arbitration clause was *silent* regarding class-wide arbitration. Certainly, the clause does not mention class-wide arbitration, but

---

**17.** The *Mastrobuono* Court cited its opinion in *Volt Info. Sciences v. Leland Stanford Jr. University* for the proposition that ambiguities as to the scope of the arbitration clause should be resolved in favor of arbitration. *Volt*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)

Green Tree argues that the language limits arbitration to claims by individuals. Green Tree relies on the portion of the clause providing for arbitration of "disputes, claims, or controversies arising from or relating to *this contract,* or the relationships which result from *this contract.*" [18] In our opinion, this language does not limit the arbitration to non-class arbitration. At best, it creates an ambiguity, and should, therefore, be construed against the drafting party, Green Tree.

Still, Green Tree contends this Court must follow the federal precedent established by the Seventh Circuit in *Champ.* Green Tree argues that this Court is obligated to follow *Champ,* as a matter of federal substantive law, mandated by section 4 of the FAA. We disagree. The United States Supreme Court has not addressed this issue and the precedent set by the federal circuit courts is not binding on this Court. Although Green Tree asserts that the Fourth Circuit *recognizes* that the FAA *requires* non-class arbitration, we believe Green Tree is incorrect. The Fourth Circuit has not addressed the issue directly; the Fourth Circuit has cited *Champ,* but only in dicta, and the question of class-wide arbitration resolved in *Champ* has not been before the Fourth Circuit. *See Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra,* 198 F.3d 473 (4th Cir.1999).[19]

Moreover, whether section 4 of the FAA applies in state court is debatable. Section 4 provides, "[a] party aggrieved by the alleged failure ... of another to arbitrate under a written agreement for arbitration may petition a *United*

---

**18.** The arbitration agreements contained in the Retail Sales Agreements in *Bazzle* and *Lackey* are identical except for one word. The *Bazzle* clause says the arbitrator will be selected by Green Tree "with the consent of *you*" and the *Lackey* clause says "with the consent of *Buyer[s].*" (Emphasis added).

**19.** In *Deiulemar Compagnia,* the Fourth Circuit cited *Champ* in its discussion of the application of Rule 81 of the Federal Rules of Civil Procedure ("FCRP") in determining arbitrability. Specifically, the court held, "[t]he lesson of *Champ* ... is that Rule 81(a)(3) does not affirmatively authorize application of the federal rules to matters that are incident to an arbitrable dispute." *Deiulemar Compagnia,* 198 F.3d at 483. Class-wide arbitration was not an issue in *Deiulemar Compagnia,* and this Court is still free to adopt the position that the FAA does not prohibit a state court from ordering class-wide arbitration where the agreement is silent.

*States district court ...."* 9 U.S.C. § 4. As noted by the California Court of Appeal in *Blue Cross,* this language contemplates enforcement in the federal district court, not state court, and the United States Supreme Court has not held that section 4 applies in state courts to counter the plain meaning of the statute. *See Volt,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (stating that the Court has never held that sections 3 and 4 of the FAA applied to state courts).

In any case, this Court can rely on independent state grounds to permit class-wide arbitration, in the trial court's discretion, where the agreement is silent. First, under general principles of contract interpretation, we construe Green Tree's omission of any reference to class actions against them. "As a matter of pure contract interpretation it is striking, and rather odd, that so many courts have interpreted silence in arbitration agreements to foreclose rather than to permit arbitral class actions." [20]  No case law or statute in South Carolina prohibits class-wide arbitration. To the contrary, this Court strongly favors arbitration and has held that a state court may order *consolidation* of claims subject to mandatory arbitration without any contractual or statutory directive to do so. *Episcopal Housing Corp. v. Federal Insurance Co.; Plaza Development Services v. Joe Harden Builder* (holding that a court has authority to order consolidation when it would serve to expedite the parties contracted-for right of arbitration and the parties have not demonstrated prejudice would result).

The rationale employed by *Champ* that Green Tree urges this Court to adopt is based on an analogy between ordering consolidation and class-wide arbitration where the agreement is silent. *Champ* grounds its decision to prohibit class-wide arbitration almost entirely on the precedent of other courts prohibiting consolidation of arbitration absent an explicit right to consolidate within the written agreement. Applying this precedent in South Carolina results in the opposite outcome. Since this Court permits consolidation of appropriate claims where the arbitration agreement is silent, it follows that this

---

**20.** Jean R. Sternlight, *As Mandatory Binding Arbitration Meets the Class Action, Will the Class Action Survive?,* 42 Wm & Mary L.Rev. 1, 83 (Oct.2000).

Court would permit class-wide arbitration, as ordering class-wide arbitration calls for "considerably less intrusion upon the contractual aspects of the relationship." 42 Wm & Mary L.Rev. 1, 86–87. As the California Court noted in *Keating,* the members of a class would be parties to an agreement with the defendant, as opposed to consolidated parties, who each have a contract with a third party but not with each other. *Id.; Keating.*

Today, we adopt the approach taken by the California courts in *Keating* and *Blue Cross,* and hold that class-wide arbitration may be ordered when the arbitration agreement is silent if it would serve efficiency and equity, and would not result in prejudice.[21] If we enforced a mandatory, adhesive arbitration clause, but prohibited class actions in arbitration where the agreement is silent, the drafting party could effectively prevent class actions against it without having to say it was doing so in the agreement. Following the federal approach risks such a result where arbitration is mandated through an un-negotiated adhesion contract. Under those circumstances, parties with nominal individual claims, but significant collective claims, would be left with no avenue for relief and the drafting party with no check on its abuses of the law.[22] Further, hearing such claims (involving identical issues against one defendant) individually, in court or before an arbitrator, does not serve the interest of judicial economy.

In South Carolina, a trial court's ruling on whether an action is properly maintainable as a class action is within the court's discretion. *Tilley v. Pacesetter Corp.,* 333 S.C. 33, 508 S.E.2d 16 (1998). Therefore, a court's decision whether or not to certify a class is reviewed under an abuse of discretion

---

**21.** Although this present case does not raise this question, we note that preclusion of class-wide or consolidated arbitration in an adhesion contract, even if explicit, undermines principles favoring expeditious and equitable case disposition absent demonstrated prejudice to the drafter of the adhesive contract.

**22.** Apparently, even the courts which prohibit class-wide arbitration when the agreement is silent acknowledge that class-wide arbitration *can* be accomplished as a practical matter. *See Johnson v. West Suburban Bank,* 225 F.3d 366, 377 (3d Cir.2000) (stating that it appears impossible for a class action to be pursued in an arbitral forum "unless the arbitration agreement contemplates such a procedure").

standard. *Id.* Neither the trial court nor the reviewing court may look to the merits when determining whether to certify a class. *Id.* (citing *Curley v. Cumberland Farms Dairy,* 728 F.Supp. 1123 (D.N.J.1990)).

The permissible scope of review of arbitral decisions is far more limited. Section 10 of the FAA provides extremely limited grounds for vacating an arbitrator's award. Only where (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone a hearing, or in refusing to hear pertinent evidence, or any other misconduct by which parties' rights have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10. If an arbitrator acted even *arguably* within the scope of his authority, even a *serious* error on his part does not warrant overturning his decision. *Major League Baseball Players Assoc. v. Garvey,* 532 U.S. 1015, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001).

South Carolina courts have interpreted this standard narrowly. "Factual and legal errors by arbitrators do not constitute an abuse of their powers.... A party may not attempt to relitigate the merits of the arbitrators' resolution of the arbitrable issues under the guise of questioning the arbitrators' power." *Pittman Mortgage Co. v. Edwards,* 327 S.C. 72, 76–77, 488 S.E.2d 335, 338 (1997) (citations omitted). The Fourth Circuit has interpreted the fourth justification in section 10 of the FAA (that the arbitrator exceeded his power) to mean that an arbitrator must act in *manifest disregard of the law* for his decision to be overturned. *See Gallus Investments, L.P. v. Pudgie's Famous Chicken, Ltd.,* 134 F.3d 231 (4th Cir.1998).

In light of the narrow standards of review in both cases, we uphold the arbitrator's awards in *Bazzle* and *Lackey.* Green Tree did not allege any fraud, corruption, or other misconduct by the arbitrator that would warrant vacating his decision to certify the class or his award under the first three justifications listed in section 10 of the FAA. 9 U.S.C. § 10. That leaves manifest disregard of the law as the only possible

justification for overturning the arbitrator's awards. In our opinion, the arbitrator did not act in manifest disregard of the law. As Green Tree noted in its brief, manifest disregard of the law occurs when the arbitrator knew of a *governing* legal principle yet refused to apply it, *and* the law disregarded was well defined, explicit, and clearly applicable to the case. (App. Br. p. 12) (citing *Trident Technical College v. Lucas Stubbs, Ltd.*, 286 S.C. 98, 333 S.E.2d 781 (1985), *cert. denied* 474 U.S. 1060, 106 S.Ct. 803, 88 L.Ed.2d 779 (1986)).

As discussed, the issue of whether class-wide arbitration is permissible when the agreement is silent was not settled in this state at the time of the *Bazzle* and *Lackey* arbitrations. Therefore, the arbitrator did not act in manifest disregard of the law by permitting it to proceed.[23] Accordingly, we uphold the arbitrator's awards.

### III. Due Process Rights of Absent Class Members

Green Tree and the Amici argue that the absent class members' due process rights were violated by the class-wide arbitration of their claims. The *Bazzle* and the *Lackey* plaintiffs, on the other hand, claim the rights of the absent class members were adequately protected through proper notice. Regardless, both classes of plaintiffs argue that this issue is not preserved for review because Green Tree failed to raise it in a timely fashion. We agree that the issue was not pre-

---

**23.** In addition, Green Tree argues that the arbitrator exceeded his powers when he awarded statutory penalties under S.C.Code Ann. § 37–10–102(a). The Bazzle and Lackey plaintiffs argue that the attorney preference statute upon which their allegations are based authorizes class actions filed before May 2, 1997 to proceed. South Carolina Code Ann. § 37–10–102 requires creditors of loans secured by real estate to ascertain the buyer's preference as to legal counsel prior to closing. The creditor complies with this requirement as long as it gives notice to the buyer of the preference information in a manner specified in the statute. Section 37–10–102 does not provide the penalties for violation of this requirement; penalties are provided in section 37–10–105. This section was amended in 1997 and now prohibits class actions. In its amendment, however, the legislature provided specifically that "any actions filed as class actions, without regard to certification, prior to May 2, 1997, may proceed, but with remedies pursuant to section 37–10–105 as amended." 1997 Act No. 99, § 1. As such, the arbitrator did not act in manifest disregard of the law by awarding penalties provided for in the amended section 37–10–105.

served for review, and, further, find no evidence that the rights of the class members were not protected in this case.

It is well-settled that an issue may not be raised for the first time on appeal. In order to preserve an issue for appellate review, the issue must be (1) raised to and ruled upon by the lower court, (2) by the appellant, (3) in a timely manner, and (4) with sufficient specificity. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000); *Wilder Corp. v. Wilke,* 330 S.C. 71, 497 S.E.2d 731 (1998); Toal, Vafai, & Muckenfuss, *Appellate Practice in South Carolina* at 66 (S.C. Bar 1999).

In *Bazzle,* Green Tree first raised the issue of the absent class members' due process rights in its motion to vacate the arbitrator's final award. Green Tree argued vaguely that "the Arbitrator violated certain due process protections afforded by the Fourteenth Amendment and the South Carolina Constitution." To be preserved, the issue must have been raised and ruled upon by the trial court at the time the class was certified. *I'On, L.L.C. v. Town of Mt. Pleasant.* As Green Tree gave the trial court no opportunity to address this issue, it is procedurally barred. *Id.*

Similarly, in *Lackey,* Green Tree did not raise the due process rights of the absent class members when it moved to decertify the class before the arbitrator. Green Tree raised this issue for the first time when it argued that the arbitrator's final award should be vacated. Because it did not give the arbitrator an opportunity to rule upon this issue, Green Tree failed to preserve it for review before this Court. *I'On; Wilder.*

Green Tree has not articulated precisely how it believes the class members' due process rights have been violated. In any case, the class members' rights appear to have been properly protected by the notice given to all of them.[24] Green Tree was given the opportunity to review and comment on the notice sent and did not voice an objection to it at that

---

**24.** *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (holding procedure followed whereby descriptive notice sent to by first-class mail to each class member with explanation of right to opt-out fully satisfied due process).

time. Although protection of the due process rights of absent class members is an essential component in all class actions, and one which may necessitate particular attention in class-wide arbitrations, Green Tree has not presented the Court with the means to address it properly.[25]

CONCLUSION

For the foregoing reasons, we **AFFIRM** the arbitrator's awards in both cases.

MOORE, WALLER, BURNETT, JJ., and Acting Justice GEORGE T. GREGORY, Jr., concur.

---

**25.** For a discussion on protection of due process rights, *see Phillips Petroleum v. Shutts;* 42 Wm & Mary L.Rev. 1.