716 S.E.2d 678

**C–SCULPTURES, LLC, Respondent,**

v.

**Gregory A. BROWN and Kerry W. Brown, Appellants.**

**No. 4826.**

Court of Appeals of South Carolina.

Heard Dec. 8, 2010.
Decided April 27, 2011.
Withdrawn, Substituted and Refiled June 23, 2011.
Rehearing Denied June 23, 2011.

520

John S. Nichols and William D. Robertson, III, both of Columbia, for Appellants.

Donald Ryan McCabe, Jr., of Columbia, for Respondent.

KONDUROS, J.

Gregory and Kerry Brown (the Browns) appeal the circuit court's confirmation of an arbitration award arising out of a dispute over money owed to C–Sculptures, LLC as general contractor in the construction of the their home. The Browns claimed C–Sculptures was precluded from seeking to enforce the contract because its contractor's license was for performing work valued at no more than $100,000, while the construction of their home cost over $800,000. They argue because the arbitrator manifestly disregarded the law on this point, the circuit court should have vacated the arbitration award. The Browns further appeal the award of attorney's fees to C–Sculptures arguing C–Sculptures improperly manipulated its pleadings and prayer for relief to position itself as the prevailing party. We affirm.

## FACTS

C–Sculptures served as the general contractor for the construction of the Browns' home. At the time of contracting, C–Sculptures was licensed to perform work within Group Two as defined by section 40–11–260(A)(2) of the South Carolina Code (2001). Group Two license holders are limited to performing work not valued in excess of $100,000. None of the parties dispute initial estimates for construction of the home were over $700,000. As construction progressed, disagreements about the work, costs, and payments developed until C–

Sculptures stopped work on the house claiming it was due $39,357.48. C–Sculptures filed a mechanic's lien in September of 2005 and filed an amended mechanic's lien in January of 2006 claiming it was owed $150,092.69 for work performed. C–Sculptures then filed a complaint seeking foreclosure of its lien, and the Browns moved to dismiss the complaint and submit the matter to arbitration pursuant to the contract between the parties. On July 26, C–Sculptures amended its complaint adding claims for unfair trade practices, quantum meruit, and breach of contract. The arbitrator, upon the Browns' motion, dismissed the quantum meruit claim. In November 2006, C–Sculptures submitted its pre-arbitration brief and the Browns submitted their brief detailing over $60,000 to which they were entitled in set-offs. The Browns also submitted a motion to dismiss C–Sculptures claims based on the fact that it did not have a valid license to perform work of this value thereby making the contract void and unenforceable. On the first day of arbitration, C–Sculptures filed a motion to amend its pleadings to recognize credits claimed by the Browns totaling $59,854.

After a five-day hearing, the arbitrator entered its order (1) permitting C–Sculptures to amend its claim to reflect credits claimed by the Browns totaling $59,845.00 thereby reducing the amount claimed in arbitration to $90,155.00; (2) denying the Browns' motion to dismiss under the licensing statutes; (3) finding the balance due to be $85,863.00; (4) denying C–Sculptures' unfair trade practices claim; (5) finding in favor of the Browns for credits of $34,132.50.00; (6) finding C–Sculptures was due $51,730.50 under the contract; (7) awarding C–Sculptures interest of $10,484.74 under the contract; and (8) finding C–Sculptures was the prevailing party under the mechanic's lien statutes and contract supporting an attorney's fees award to it of $24,707.00.

The Browns petitioned the circuit court to vacate the arbitration award, but the circuit court denied their request and confirmed the arbitrator's award. This appeal followed.

## LAW/ANALYSIS

### I. Licensure

■ The Browns maintain the circuit court erred in confirming the arbitration award because the arbitrator showed a

manifest disregard for the law in failing to find C–Sculptures held an invalid license and therefore could not enforce the contract pursuant to section 40–11–370(C) of the South Carolina Code (2011). We disagree.

"When a dispute is submitted to arbitration, the arbitrator determines questions of both law and fact. Generally, an arbitration award is conclusive and courts will refuse to review the merits of an award. An award will be vacated only under narrow, limited circumstances." *Gissel v. Hart,* 382 S.C. 235, 241, 676 S.E.2d 320, 323 (2009). A reviewing court should vacate an arbitrator's decision only when the arbitrator has exceeded his or her authority or has manifestly disregarded or perversely misconstrued the law. *Id.* "[F]or a court to vacate an arbitration award based upon an arbitrator's manifest disregard of the law, the governing law ignored by the arbitrator must be well defined, explicit, and clearly applicable." *Id.* "[M]anifest disregard of the law occurs when the arbitrator knew of a *governing* legal principle yet refused to apply it, *and* the law disregarded was well defined, explicit, and clearly applicable to the case." *Bazzle v. Green Tree Fin. Corp.,* 351 S.C. 244, 268, 569 S.E.2d 349, 361 (2002), *vacated and remanded on other grounds,* 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). "The focus is on the conduct of the arbitrator and *presupposes something beyond a mere error in construing or applying the law.*" *Gissel,* 382 S.C. at 241, 676 S.E.2d at 323. An arbitrator manifestly disregards the law when he or she appreciates the existence of a clearly governing legal principle and decides to ignore it. *Harris v. Bennett,* 332 S.C. 238, 246, 503 S.E.2d 782, 787 (Ct.App.1998).

Pursuant to section 40–11–30 of the South Carolina Code (2011), a person or entity acting as a general contractor is required to obtain a license if the work to be performed will be of a greater value than $5,000. The statute states:

No entity or individual may practice as a contractor by performing or offering to perform contracting work for which the total cost of construction is greater than five thousand dollars for general contracting or greater than five thousand dollars for mechanical contracting without a license issued in accordance with this chapter.

*Id.* The chapter governing licensing also contains provisions regarding net worth requirements for general contractors who intend to do work within different cost ranges. The relevant statute states:

> (A) An applicant for a general contractor's license or a general contractor's license renewal who performs or offers to perform contracting work for which the total cost of construction is greater than $5,000.00, and an applicant for license group revisions must provide an acceptable financial statement with a balance sheet date no more than twelve months before the date of the relevant application showing a minimum net worth for each license group as follows: ...
>
> (2) Group Two
> (a) bids and jobs not to exceed $100,000.00 per job;
> (b) required net worth of $20,000.00;
> (c) on initial application, an owner-prepared financial statement with an affidavit of accuracy;
> (d) on renewal, an owner-prepared financial statement with an affidavit of accuracy; ...
>
> (5) Group Five
> (a) bids and jobs unlimited;
> (b) required net worth of $250,000.00;
> (c) on initial application, a financial statement audited by a licensed certified public accountant or a licensed public accountant in accordance with GAAP, including all disclosures required by GAAP;
> (d) on renewal, a financial statement reviewed by a licensed certified public accountant or a licensed public accountant in accordance with GAAP, including all disclosures required by GAAP.

S.C.Code Ann. § 40–11–260 (2011).

"A licensee is confined to the limitations of the licensee's license group and license classifications or subclassifcations as provided in this chapter." S.C.Code Ann. § 40–11–270(A) (2011). "The board may assess a penalty authorized by law against a licensee who undertakes or offers to undertake an improvement exceeding the limitations of the licensee's group." S.C.Code Ann. § 40–11–280 (2001). The chapter defines an "unlicensed contractor" as "an entity performing or overseeing general or mechanical construction without a li-

cense." S.C.Code Ann. § 40–11–20(24) (2011). The chapter also addresses the limitation on the right of a general contractor to enforce a contract.

An entity which does not have a valid license as required by this chapter may not bring an action either at law or in equity to enforce the provisions of a contract. An entity that enters into a contract to engage in construction in a name other than the name that appears on its license may not bring an action either at law or in equity to enforce the provisions of the contract.

§ 40–11–370(C).

In *Columbia Pools, Inc. v. Moon*, 284 S.C. 145, 146–47, 325 S.E.2d 540, 541 (1985), the supreme court held a general contractor licensed in Michigan, but not licensed in South Carolina at the time he entered into a contract, could not enforce the contract pursuant to section 40–59–10 of the South Carolina Code (2009), which prevents unlicensed residential homebuilders from enforcing a contract.[1] In *W & N Construction Co. v. Williams*, 322 S.C. 448, 472 S.E.2d 622 (1996), the supreme court determined a general contractor whose license had been revoked for failure to pay taxes could not enforce a contract because contractors were required to be licensed. However, the opinion does not address the contractor classifications and does not reference section 40–11–370(C) because it was not enacted at the time.[2]

The present case revolves around the appellate court's standard of review in arbitration cases. While the Browns' contention that the contract entered into was invalid because C–Sculptures was underlicensed may be correct, no cases are directly on point and the enforcement provision in section 40–11–370(C) does not make the issue perfectly clear. The

---

1. S.C.Code Ann. § 40–59–30(B) (2011) provides:

   Notwithstanding Section 29–5–10, or another provision of law, a person or firm who first has not procured a license or registered with the commission and is required to do so by law may not file a mechanics' lien or bring an action at law or in equity to enforce the provisions of a contract for residential building or residential specialty contracting which the person or firm entered into in violation of this chapter.

2. It appears the enactment of section 40–11–370(C) was in response to *W & N Construction*.

arbitrator's award indicated he considered all the applicable law and arguments in reaching his decision and the issue was sufficiently briefed and argued so as to bring it to his attention. Under our standard of review, we cannot conclude the arbitrator showed a manifest disregard for the law as the law on this issue is not well defined, explicit, and clearly applicable. Therefore, we affirm the circuit court's confirmation of the arbitration award.

## II. Attorney's Fees

■■■ The Browns maintain the circuit court erred in not finding the arbitrator's award of attorney's fees to C–Sculptures was arbitrary and capricious or in manifest disregard of the law.[3] We disagree.

The mechanic's lien statute provides a method for determining the prevailing party in mechanic's lien cases and thereby is entitled to attorney's fees under the statute.

> For purposes of the award of attorney's fees, the determination of the prevailing party is based on one verdict in the action. One verdict assumes some entitlement to the mechanic's lien and the consideration of compulsory counterclaims. The party whose offer is closer to the verdict reached is considered the prevailing party in the action. If the difference between both offers and the verdict is equal, neither party is considered to be the prevailing party for purposes of determining the award of costs and attorney's fees.

> If the plaintiff makes no written offer of settlement, the amount prayed for in his complaint is considered to be his final offer of settlement.

> If the defendant makes no written offer of settlement, the value of his counterclaim is considered to be his negative offer of settlement. If the defendant has not asserted a

---

3. The Browns also claim the circuit court erred in confirming the award pursuant to the parties' contract. However, because this analysis finds C–Sculptures was the prevailing party under the statute, which the Browns maintain is the controlling law, we need not address the issue of whether the contract supported an award of attorney's fees. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when the determination of a prior issue is dispositive of the appeal).

counterclaim, his offer of settlement is considered to be zero.

S.C.Code Ann. § 29–5–10(b) (2007).

Here, C–Sculptures moved to amend its pleadings on the first day of the five-day arbitration. While this was late in the proceedings, the Browns took no action to indicate they were willing to settle the case based on that concession. The arbitrator's award was then closer to C–Sculptures' request than the Browns' settlement offer, which was zero under the terms of the statute.

The arbitrator followed the statutory scheme. The Browns' argument is really that the arbitrator should not have allowed C–Sculptures to amend its pleadings at that stage of the arbitration because that manipulated the range of the possible award to increase C–Sculptures' odds of "being closest to the pin" and therefore the prevailing party. However, whether to allow amendment of the pleadings is within the arbitrator's discretion. The attorney's fees award was neither arbitrary nor capricious and did not demonstrate a manifest disregard for the law. Consequently, the circuit court's confirmation of the arbitration award is

**AFFIRMED.**

HUFF and LOCKEMY, JJ., concur.