## 7851

### STATE v. POSEY.

1. BREACH OF TRUST.—Whether an agreement to divide money found is illegal depends on the circumstances attending the finding.
2. IBID.—One who obtains the money or property of another under a trust created for an unlawful purpose and fraudulently appropriates it to his own use is guilty of a crime.
3. LARCENY.—Where the property of another is obtained by trick, artifice or fraud with intent to steal it is a trespass *ob initio,* and if it is afterwards fraudulently appropriated, it is indictable as larceny at common law.
4. NEW TRIAL—CHARGE.—Where the charge is too favorable to appellant and on this point is erroneous, the verdict should not be set aside on ground that jury disregarded the instructions of the Court where the verdict can be based on any view of the evidence which would make it accord with the charge.
5. REHEARING refused.

Before J. E. McDONALD, Special Judge, Anderson, March, 1910. Affirmed.

Indictment against Wesley Posey. Defendant appeals.

*Messrs. Martin & Earle,* for appellant, cite: *An agreement for an unlawful purpose, or to work a fraud upon another, is void:* 1 Mechem on Agency 18, 19, 20; 1 Ency. 971; 28 Ency. 866; 15 Ency. 943. *Variance between the allegation and proof is fatal here:* 5 S. C. 65; 34 S. C. 661; 7 Ency. P. & P. 452.

*Solicitor P. A. Bonham,* contra.

The opinion in this case was filed on March 16, 1911, but held up on petition for rehearing until

April 4, 1911. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.   The defendant was convicted
of breach of trust with fraudulent intent, upon an indict-
ment charging him with fraudulently and feloniously appro-
priating to his own use the sum of ninety dollars, the prop-
erty of L. B. Frazier, which had come into his hands "as
agent of said L. B. Frasier, to make change for said L. B.
Frazier of two hundred dollars and return to him, the said
L. B. Frazier, with part of said two hundred dollars."

Frazier's testimony was, in effect, that, as he came out
of a bank in the city of Anderson, he saw the defendant
and another fellow, who appeared from the evidence to be
a confederate of the defendant, on the street.   This fellow
pretended to find a pocketbook.   The defendant nudged
Frazier and asked his confederate what it was.   The reply
was, "a pocketbook."   Frazier suggested that they try to
find the owner.   The other fellow said it belonged to who-
ever found it.   Frazier tried to get them to take it to
several white men to see what was in it, contending that it
belonged to the one who lost it; but the others contended
that it belonged to those who found it.   Finally the defend-
ant opened the book and pretended to find a hundred dollar
bill in it, and proposed to take it to a Mr. Brownlee to get
it changed.   Defendant then went away,—ostensibly to
Mr. Brownlee's to get the bill changed,—but when he
returned he said it was a two hundred dollar bill, and that
Mr. Brownlee had only $130.00 in change, and told him if
he would get $70.00 he could change the bill.   They asked
Frazier if he could let them have $70.00 to get the bill
changed, offering to get it changed and divide the money
with him.   He went to the bank and got $70.00, and
defendant wanted to take it to Mr. Brownlee, but Frazier
insisted on going with him, saying that he knew Mr.
Brownlee, and had confidence in him, and wanted to see
him about the matter.   When they got in front of a gate,
which they represented to be Mr. Brownlee's (Frazier not
knowing where Mr. Brownlee lived), defendant told Frazier

not to go in with him, saying: "You know how these town people are; you cannot come in here." Defendant and his confederate then told Frazier to give defendant the $70.00 to make the change. Frazier put his hand in his pocket to get the money and took out $90.00, which defendant snatched out of his hand, pretending to be in a great hurry, and went on to the house, paying no heed to Frazier's protest at snatching the money from him. The other fellow assured Frazier that defendant would return with the money. While standing there, Frazier was watching defendant at the front door of the house, and to see Mr. Brownlee when he came out. Just at that time the other fellow attracted Frazier's attention to himself by groaning and acting as if suddenly taken violently ill, and when Frazier looked again for defendant he had gone around the house and disappeared. On cross-examination, Frazier said that he let the defendant have the money to make the change, but did not intend that he should do it, until he saw Mr. Brownlee and found out whether it was all right or not; and that if Mr. Brownlee had said it was all right, he would have been willing to a division of the money with the others; that the others proposed to him to get the money changed and divide it between them; but denied that he agreed to that proposition, and claimed that he wanted to get them to take the money to Mr. Brownlee, in the hope that he would take it and find the true owner, who might give him a small reward for having it returned. Frazier also said that defendant was not his agent; that he knew nothing about any agency. But on his redirect examination he said he did not know what an agent or agency meant.

It will be seen from the foregoing statement of the evidence that there was no error in refusing defendant's motion for the direction of a verdict, made upon the ground that there was no evidence of any lawful agency or trust. The contention of defendant was

that the evidence showed only an agency, or trust, for the purpose of consummating an agreement between Frazier and the others to divide among them money which had been found; that, therefore, it was an agency for an illegal purpose,—one which was contrary to public policy and void, and which could not be the foundation of a valid trust, such as would be necessary to support an indictment for the fraudulent breach thereof. The Circuit Judge charged the jury, in accordance with defendant's contention, that it was necessary for the State to prove a lawful agency; that one cannot constitute another his agent for an immoral or illegal purpose, or one that is against public policy; that, therefore, if they found that there was an agreement between Frazier and the defendant that money which had been found and did not belong to them,—if such were the fact,—should be divided between them, and defendant was the agent of the prosecutor for the accomplishment of that agreement, there was no lawful agency, and defendant should be acquitted. His Honor erred, in the first place, in assuming that an agreement to divide money found is unlawful. Whether it would be so or not would depend upon the circumstances. If money is found under such circumstances that there is absolutely no clue to the ownership, and no reasonable expectation that the owner can be found, the finder has a legal right to appropriate it to his own use, and would not be guilty of larceny in doing so. But he would be, if, knowing the owner, or having a reasonable clue to the ownership, he fraudulently converts it to his own use. 25 Cyc. 36; *State* v. *Ferguson,* 2 McM. 502. The intent is the gist of the crime of larceny. The presence or absence of larcenous intent may appear from all the circumstances attending the finding, the thing found, and the conversion. His Honor erred, also, in charging that a trust created for an unlawful purpose, or one contrary to public policy, will not support an indictment for the fraudulent breach thereof. While it is true

that the civil Courts will not lend their aid to enforce such a trust between the parties thereto, standing in *pari delicto,* it does not follow that one who obtains the money or property of another under such a trust, and fraudulently appropriates it to his own use, can escape the penalty of the criminal law. It would be more against public policy to allow such crimes to go unpunished. Crime is against society and is punished for its protection and for the vindication of the law, rather than to redress the wrongs of its victims. It does not lie in the mouths of thieves and swindlers to say that they should be allowed to steal and swindle with impunity, because their victims may also be guilty of wrongdoing. Their own offense is not thereby made less heinous. "The illegality of the purpose for which the money or property embezzled was intrusted to defendant is no defense to a prosecution for its conversion by him." 15 Cyc. 508. "The fact that the victim lost his property while himself engaged in an illegal transaction does not prevent the offense (larceny) from being committed." 25 Cyc. 43. The following is taken from a note on the same page: "So, where defendants obtained money from their victim on the fraudulent pretense that they could buy with it for him skillfully counterfeited money, they were guilty of larceny by trick. And where the victim was lending himself to a fraudulent scheme of defendant, the larceny was none the less punishable." (Cases cited.) One may be convicted of stealing from a thief (2 Bish. Cr. L., sec. 781), and the ownership may be alleged to be in the first thief or the true owner. 2 Bish. Cr. L., sec. 789.

The indictment in this case might well have been laid for larceny at common law. When the possession of property has been legally obtained, and thereafter fraudulently converted to his own use by the person having the possession, an indictment at common law will not lie, because larceny, at common law, is an offense against the possession of property; hence the statute

against breach of trust with fraudulent intent. *State* v. *Butler*, 21 S. C. 355. But where the possession of property is obtained by trick, artifice or fraud, with intent to steal it, it is a trespass *ab initio;* and if it is afterwards fraudulently appropriated, it is indictable as larceny at common law. *Joplin* v. *Carrier*, 11 S. C. 328, and cases cited.

The charge was, therefore, too favorable to the defendant. While the jury are bound to take the law from the Court, right or wrong, and it would be error to refuse to set aside a verdict found in violation of the instructions of the Court, yet, where it appears that the verdict could have been based upon any view of the evidence, which would make it in accord with the charge, it will not be disturbed, especially where the charge is too favorable to the party attacking the verdict. As the jury could have found from the testimony that there was an agency for a lawful purpose, it must be presumed that the verdict was based upon that view of the evidence, and that it is, therefore, in accord with the charge.

The other exceptions need not be discussed, as ·they impute error in the decision of the questions of fact, which this Court cannot review.

Affirmed.

Petition for rehearing was refused by formal order, filed April 4, 1911.