578 S.E.2d 32

**The STATE, Respondent,**

v.

**Raquib Abdul AL–AMIN, Appellant.**

**No. 3602.**

Court of Appeals of South Carolina.

Heard Jan. 14, 2003.

Decided March 3, 2003.

</div>

Chief Attorney Daniel T. Stacey, of the SC Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka; and Solicitor Warren B. Giese, all of Columbia, for Respondent.

ANDERSON, J.:

Raquib Al–Amin was convicted of murder. Al–Amin appeals alleging the Circuit Court erred in denying his motion for a directed verdict. Additionally, Al–Amin asserts he is

entitled to a new trial because the Circuit Court allowed admission of his prior armed robbery conviction and excluded Al-Amin's testimony implicating third party guilt. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Around 3:30 p.m. on August 25, 1997, Michael Watkins, the manager of Churchill Place Apartments, was returning to the apartment complex and pulled into the parking lot. When Watkins looked out of his windshield, he noticed Al-Amin dragging something out of his apartment that was "consistent with being a [human] body" wrapped in a pink blanket. When Al-Amin became aware of Watkins watching him, he dragged the blanket back into his apartment. Watkins became suspicious. After he parked, Watkins decided to wait in his vehicle for several more minutes. About five minutes later, Al-Amin walked out of the apartment and noticed Watkins was still sitting in his vehicle. Al-Amin smiled at Watkins, waved his hand at him, and went upstairs as if nothing was going on. Within minutes, Al-Amin returned to his apartment.

After this incident, Watkins went to his office. At approximately 4:00 p.m., while in his office, Watkins observed Al-Amin walking across the catwalk from apartment 220, which was the victim's apartment. At 5:30 p.m., Watkins, still suspicious, checked the dumpster closest to Al-Amin's apartment. Watkins found the pink blanket which he had earlier seen Al-Amin dragging from his apartment. Watkins pulled aside part of the blanket and saw a human arm. He then called 911.

Officer Michael Mahon, with the City of Columbia Police Department, responded to the 911 call. Watkins advised Officer Mahon that he had seen Al-Amin dragging a body wrapped in a blanket from apartment four to the dumpster. Officer Mahon walked over to the dumpster and confirmed there was a body in the dumpster. Officer Mahon stated he could "see what looked like a patch of brown skin, maybe part of an arm or a leg." After verifying there was a body in the dumpster, Officer Mahon called for an ambulance crew. Several officers arrived to help secure the scene and provide back-up.

Officer Dee Ann Johnson was present when the body was removed from the dumpster. According to Officer Johnson, "there was bleeding from the nose and there was a gash over [the victim's] left eye and also some marks on her neck." The coroner discovered a crack pipe in the crotch area of the victim's shorts.

Watkins related his story to the police. Thereafter, a warrant was obtained to search Al–Amin's apartment. While searching the apartment, the police found: a large construction bolt which had black electrical tape wrapped around the threaded end with the victim's blood on it; a shower curtain with human blood on it; carpet with human blood on it; a savings account bank book with Al–Amin's name on it; a box of checks with Al–Amin's name on them; and Al–Amin's bills with his name and the apartment's address on them.

At the autopsy, Investigator Walter E. Bales "noticed there was blunt trauma or striking injuries on the victim ... [that] looked like they were caused by the head of [the] bolt" found in Al–Amin's apartment. The pathologist who performed the victim's autopsy testified there were four deep, full-thickness lacerations, which were all slightly curved, on the victim's face and head. When asked "[w]hat type of blow would cause injury all the way to someone's bone in their head," the pathologist opined: "That's an injury with significant force that is generally caused by a heavy object being swung with force." The pathologist further declared the victim had injuries to her neck that were "associated with someone who has been manually strangled" and that she most likely died of the strangulation, although the blows to the head were sufficient to have caused death.

Al–Amin was charged with murder. He was convicted and sentenced to life without parole.

## *LAW/ANALYSIS*

### I. Directed Verdict Motion

Al–Amin argues the Circuit Court erred when it denied his motion for directed verdict because the State failed to present sufficient evidence to convict him on the murder charge. We disagree.

In reviewing the denial of a motion for a directed verdict in a criminal case, an appellate court must view the evidence in the light most favorable to the State. *State v. Harris,* 351 S.C. 643, 572 S.E.2d 267 (2002); *State v. Morgan,* 352 S.C. 359, 574 S.E.2d 203 (Ct.App.2002). The trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. Dudley,* Op. No. 3579 (S.C. Ct.App. filed Dec. 9, 2002) (Shearouse Adv. Sh. No. 41 at 57). When a motion for a directed verdict is made in a criminal case where the State relies exclusively on circumstantial evidence, the trial judge is required to submit the case to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Lollis,* 343 S.C. 580, 541 S.E.2d 254 (2001). On the other hand, a defendant is entitled to a directed verdict when the State fails to produce any direct or substantial circumstantial evidence of the offense charged. *State v. Rothschild,* 351 S.C. 238, 569 S.E.2d 346 (2002); *State v. Walker,* 349 S.C. 49, 562 S.E.2d 313 (2002).

In this case, the State presented substantial circumstantial evidence pointing to Al–Amin's guilt. Watkins observed Al–Amin dragging something out of his apartment that was "consistent with being a [human] body" wrapped in a pink blanket. Watkins found this same pink blanket containing the victim's body in the dumpster closest to Al–Amin's apartment later that day.

Our courts have held that concealment of the body of a murdered person is a circumstance which tends to show guilt and should go to the jury to weigh the evidence. *See State v. Ridgely,* 251 S.C. 556, 164 S.E.2d 439 (1968); *State v. Epes,* 209 S.C. 246, 39 S.E.2d 769 (1946). In *State v. Ridgely,* the Supreme Court, quoting *State v. Epes,* discussed this principle:

> The facts in this case are similar in many respects to the facts in the case of *State v. Epes,* 209 S.C. 246, 39 S.E.2d 769 (1946). In that case the accused reported to the police the disappearance of his wife and pretended to aid in search of her. Later he admitted that he had concealed her body and led the police to an improvised grave. It was his

contention that his wife took an overdose of medicine and died as a result of it. In that case, as here, the law of circumstantial evidence was largely relied upon by the State. Referring to concealment of the body of a murdered person, this court said:

> The general rule is that the concealment or the attempted destruction of a body of a person murdered is regarded as an incriminating circumstance and will be given probative force in connection with other facts. *See* Annotation, 2 A.L.R. 1227, and the numerous cases there cited to sustain this proposition; and also, *Wigmore on Evidence*, 2d Ed., Secs. 32, 172, 267, 272 and 276.

> The action of the appellant in concealing the body of his wife so as to divert suspicion from himself was a relevant circumstance tending to show guilt, and it was for the jury to estimate its weight, and it was for the jury to determine whether his explanation and the motive he assigned were truthful or otherwise. 39 S.E.2d at 777.

*Id.* at 565, 164 S.E.2d at 443 (internal quotation marks omitted); *see also* 40A Am.Jur.2d *Homicide* § 462 (1999) (concealment or attempted destruction of body of murder victim is regarded as incriminating circumstance and will be given probative force in connection with other facts; an inference of guilt may be drawn therefrom). *Cf. State v. Beckham,* 334 S.C. 302, 513 S.E.2d 606 (1999) (attempted destruction of evidence is regarded as a relevant incriminating circumstance).

▇ The police discovered a construction bolt with the victim's blood on it in the closet in Al–Amin's apartment. Investigator Bales testified that "the gouge marks into the victim's head looked like they were the same size as the head of that bolt." Dr. Sally A. Harding, the pathologist who performed the autopsy on the victim, described four deep injuries to the victim's face and head. Harding stated a heavy object being swung with force generally causes the types of injuries sustained by the victim. Harding declared three of the four injuries were 2.8 centimeters long, which is the same size as the bolt found in Al–Amin's apartment. When asked whether the bolt was consistent with the length of the injuries to the victim's head, Dr. Harding responded: "Yes, that would be consistent with the length of the injury and the type of

implement that could have inflicted this type of full-thickness laceration." Harding observed marks on the victim's neck which were consistent with manual strangulation. At the time Al–Amin reported to the police station, he had scratches on the left side of his face, on his cheek and lips, which were indicative of a struggle.

Upon searching Al–Amin's apartment, the police noticed the apartment had been cleaned and there was a smell of mothballs about the apartment. Further, the police detected human blood on the shower curtain and carpet inside the apartment. Al–Amin's bed had no blanket or bedspread on it. Darryl Cunningham professed he saw Al–Amin with the victim in Al–Amin's apartment around 2:30 p.m. that day and that Al–Amin and the victim were alone when Cunningham left. At the scene, police observed that the victim's body was fairly limp and the blood was still wet and appeared to be fresh.

In addition, Al–Amin fled the scene. Flight from prosecution is admissible as evidence of guilt. *See State v. Thompson,* 278 S.C. 1, 292 S.E.2d 581 (1982), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991). "[A]ttempts to run away have always been regarded as some evidence of guilty knowledge and intent." *State v. Grant,* 275 S.C. 404, 407, 272 S.E.2d 169, 171 (1980) (internal quotation marks omitted) (clarifying that while a jury charge on flight as evidence of guilt is improper, admission of evidence and argument by counsel concerning it are allowed). *See also State v. Beckham,* 334 S.C. 302, 513 S.E.2d 606 (1999) (evidence of flight has been held to constitute evidence of guilty knowledge and intent); *State v. Ballenger,* 322 S.C. 196, 200, 470 S.E.2d 851, 854 (1996) ("flight . . . is at least some evidence of guilt"); *Thompson,* 278 S.C. at 10–11, 292 S.E.2d at 587 (evidence of flight admissible to show guilty knowledge, intent, and that defendant sought to avoid apprehension).

These facts, especially Al–Amin's apparent attempt to conceal the body and his flight from the scene, constitute substantial circumstantial evidence presented by the State to warrant submission of the case to the jury. The motion for directed verdict was properly denied.

## II. Prior Armed Robbery Conviction

Al–Amin claims he is entitled to a new trial because the Circuit Court erred when it allowed the State to introduce evidence of Al–Amin's prior armed robbery conviction without making a probative value/prejudicial effect analysis. Al–Amin was convicted of armed robbery in 1988 and was released from confinement in 1991. He remained on parole until 1994. Al–Amin's trial and conviction occurred in 2000. Clearly, Al–Amin's release from confinement in 1991 falls within the ten-year time limit provided by Rule 609(b), SCRE.

The State argues that, since Al–Amin's prior armed robbery conviction fell within the time limits for admission, the Circuit Court could admit evidence regarding the armed robbery conviction without weighing the probative value against the prejudicial effect because armed robbery is considered a crime of dishonesty under Rule 609(a)(2), SCRE.

Rule 609, SCRE, which governs the admissibility of prior crimes to attack the credibility of a witness, provides:

(a) **General rule.** For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

. . . .

(b) **Time limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of

the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

The question as to whether armed robbery is a crime of dishonesty in this state is novel. For guidance and edification, we look to the federal authorities and other state jurisdictions.

## A. Rule 609(a)(2) in the Federal Jurisdictions

There is disagreement among federal circuit courts and state courts construing Rule 609(a)(2) as to which crimes are included. The disagreement revolves around whether convictions for theft crimes, such as larceny, robbery, and shoplifting, should be admitted under the rule as involving dishonesty or false statement.

A majority of the federal circuits and the Conference Committee for the federal rules limit crimes of dishonesty to those involving *crimen falsi. See, e.g., United States v. Fearwell,* 595 F.2d 771 (D.C.Cir.1978); *United States v. Ashley,* 569 F.2d 975 (5th Cir.1978); *United States v. Carroll,* 663 F.Supp. 210 (D.Md.1986). "The original House–Senate Conference Committee Report explained that crimes involving dishonesty and false statement 'means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi,* the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.'" 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 609.04[3][a] (Joseph M. McLaughlin, ed., 2d ed.2002).

*Crimen falsi* means "the crime of falsifying." *Black's Law Dictionary* 379 (7th ed.1999). *Crimen falsi* has been defined as "[a] crime in the nature of perjury"; "[a]ny other offense that involves some element of dishonesty or false statement." *Id.* Crimes involving *crimen falsi* include perjury, false statement, false pretense, criminal fraud, or embezzlement. *See* E. Warren Moise, *Impeachment Evidence: Attacking and Supporting the Credibility of Witnesses in South Carolina* 109 (1996). Convictions solely involving the use of force, such as assault and battery, or crimes such as public drunkenness or prostitution, generally are not admissible under Federal Rule 609(a)(2). *Id.*

Because the federal courts have adopted a narrow interpretation of the words "dishonesty or false statement" in Rule 609(a)(2), most have decided robbery is not a crime of dishonesty. *See, e.g., United States v. Grandmont,* 680 F.2d 867 (1st Cir.1982) (robbery per se is not a crime of dishonesty under the federal rule); *United States v. Alexander,* 48 F.3d 1477 (9th Cir.1995) (prior robbery convictions are not admissible for impeachment purposes under Rule 609(a)(2)); *United States v. Brackeen,* 969 F.2d 827 (9th Cir.1992) (bank robbery is not per se crime of dishonesty for purposes of rule allowing impeachment of witness by evidence that he has been convicted of crime involving dishonesty); *United States v. Dunson,* 142 F.3d 1213 (10th Cir.1998) (prior conviction for robbery is not automatically admissible under Rule 609(a)(2)); *United States v. Sellers,* 906 F.2d 597, 603 (11th Cir.1990) ("It is established in this Circuit ... that crimes such as theft, robbery, or shoplifting do not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2)."); *see also Weinstein's Federal Evidence,* § 609.04[3][c] ("robbery is generally held not to constitute a crime of dishonesty" under Rule 609 of the Federal Rules of Evidence); 1 Kenneth S. Broun et al., *McCormick on Evidence* § 42, at 161 (John W. Strong ed., 5th ed. 1999) ("[F]ederal courts and most state courts are unwilling to classify offenses such as petty larceny, shoplifting, [and] robbery ... as per se crimes of 'dishonesty or false statement.' ").

The precedent set by the federal circuit courts is not binding on this Court. *See Bazzle v. Green Tree Fin. Corp.,* 351 S.C. 244, 569 S.E.2d 349 (2002), *cert. granted,* —— U.S. ——, 123 S.Ct. 817, 154 L.Ed.2d 766 (Jan. 10, 2003). We decline to follow the federal courts' restrictive interpretation of the phrase "dishonesty or false statement" in Rule 609(a)(2).

## B. Construction of Rule 609(a)(2) by Other State Courts

The majority of other state courts which have considered the question of whether robbery is a crime of dishonesty for purposes of Rule 609(a)(2) have answered in the affirmative. *See* Jane Massey Draper, Annotation, *What Constitutes Crime Involving "Dishonesty or False Statement" Under Rule 609(a)(2) of Uniform Rules of Evidence or Similar State Rule*

*Crimes Involving Violence or Potential for Violence,* 83 A.L.R. 5th 277 (2000) (listing in section 11 that Alaska, Illinois, Kansas, New Mexico, Pennsylvania, Tennessee, and Washington have found robbery to be a crime of dishonesty while Minnesota, North Dakota, and Utah have not).

Prior convictions, depending on the nature of the offense, may have different types of probative value relative to a witness's credibility. Crimes of dishonesty and those involving false statement have an obvious bearing on a defendant's credibility.

The Supreme Court of Alaska, in *Alexander v. State,* 611 P.2d 469 (Alaska 1980), concluded robbery was a crime of dishonesty under that state's very similar rule of evidence. The court stated: "Although robbery involves the additional element of force or putting in fear, it, like larceny, concerns the unlawful taking of something of value." *Id.* at 476 (footnotes omitted). In a footnote, the court further added: "It is the larceny element of robbery which makes such a conviction admissible as impeachment of a witness." *Id.* at 476 n. 18.

Although Connecticut has a test which is different from our Rule 609(a)(2), case law from that state is enlightening. In *State v. Dawkins,* 42 Conn.App. 810, 681 A.2d 989 (1996), the Appellate Court of Connecticut elucidated:

> Two general categories of prior convictions are admissible for impeachment. "First are those crimes that by their very nature indicate dishonesty or tendency to make false statement.... The second category involves convictions for crimes that do not reflect directly on the credibility of one who has been convicted of them." It is recognized in Connecticut courts "that crimes involving larcenous intent imply a general disposition toward dishonesty such that they also fall within this [first] category.... Convictions of this sort obviously bear heavily on the credibility of one who has been convicted of them. The probative value of such convictions, therefore, may often outweigh any prejudice engendered by their admission." The prior convictions at issue here fall within the first category. Each involved a prior conviction for larceny.

*Id.* at 994 (citations omitted). Thereafter, in *State v. Banks,* 58 Conn.App. 603, 755 A.2d 279 (2000), the Connecticut court reiterated:

> [Our Supreme Court] has recognized that **crimes involving larcenous intent imply a general disposition toward dishonesty** or a tendency to make false statements.... [Furthermore] **larceny, which is the underlying crime in any robbery, bears directly on the credibility of the witness-defendant.** Thus, in the present case, the defendant's prior convictions of larceny and robbery were highly probative of his truthfulness and veracity.

*Id.* at 289 (citation omitted) (internal quotation marks omitted) (emphasis added).

The Supreme Court of Delaware has "construed the phrase 'dishonesty or false statement' in D.R.E. 609 to mean that crimes involving dishonest conduct as well as crimes involving false statements are admissible for impeachment purposes." *Gregory v. State,* 616 A.2d 1198, 1204 (Del.1992). *See also Morris v. State,* 795 A.2d 653, 665 (Del.2002) (noting " 'prior conviction[ ] for robbery ... clearly ha[s] been determined by this Court to be [a] crime[ ] involving dishonest conduct' " under Rule 609(a)(2)).

The District of Columbia Court of Appeals, in *Bates v. United States,* 403 A.2d 1159 (D.C.1979), noted that Congress, in legislating for the District of Columbia, had an expansive view of "dishonesty or false statement." The *Bates* court emphasized: " 'The offenses which involve dishonesty or false statement and which may be used in the discretion of the cross-examining party include, but are not limited to, any offense involving fraud, or intent to defraud, larceny, robbery.... ' " *Id.* at 1161.

In finding the trial court properly denied the defendant's motion to prohibit the introduction of his prior convictions for armed robbery, the Appellate Court of Illinois, in *People v. Dee,* 26 Ill.App.3d 691, 325 N.E.2d 336 (1975), explained:

> While the crime of robbery involves an element of violence, this does not remove it from the category of crimes which involve dishonesty. Robbery is a form of stealing [and is a crime] which reflect[s] on the honesty and integrity of the perpetrator. Robbery is not a crime of passion or

violence done in response to some form of provocation. It is generally a preplanned crime designed to steal property from a person in rightful possession. We are of the opinion that a prior conviction for the crime of robbery, whether armed or otherwise, is probative of the perpetrator's honesty and veracity as a witness.

*Id.* at 341–42; *see also People v. Paul,* 304 Ill.App.3d 404, 237 Ill.Dec. 869, 710 N.E.2d 499 (1999) (armed robbery has been treated as a crime of dishonesty); *People v. Thomas,* 220 Ill.App.3d 110, 163 Ill.Dec. 12, 580 N.E.2d 1353 (1991) (robbery is a crime of dishonesty for Rule 609 impeachment purposes; stating that robbery is a veracity-related crime and a conviction thereof is probative of defendant's credibility); *People v. Harris,* 220 Ill.App.3d 848, 163 Ill.Dec. 1, 580 N.E.2d 1342 (1991) (theft-related offenses, such as armed robbery, obviously involve dishonesty and arguably reflect on a person's likelihood of telling the truth when testifying as a witness).

The Supreme Court of Kansas examined the issue in *State v. Thomas,* 220 Kan. 104, 551 P.2d 873 (1976):

[R]obbery, larceny, and burglary, while not showing a propensity to falsify, do disclose a disregard for the rights of others which might reasonably be expected to express itself in giving false testimony whenever it would be to the advantage of the witness. If the witness had no compunctions against stealing another's property or taking it away from him by physical threat or force, it is hard to see why he would hesitate to obtain an advantage for himself or friend in a trial by giving false testimony. Furthermore, such criminal acts, although evidenced by a single conviction, may represent such a marked breach from sanctioned conduct that it affords a reasonable basis of future prediction upon credibility.

*Id.* at 876 (internal quotations omitted); *see also State v. Davis,* 255 Kan. 357, 874 P.2d 1156 (1994) (noting that cross-examination of defense witness concerning prior robbery conviction was proper impeachment because robbery is a crime of dishonesty under the applicable Kansas Rule of Evidence).

In *State v. Johnson,* 10 Ohio App.3d 14, 460 N.E.2d 625 (1983), the Court of Appeals of Ohio discussed the dishonesty prong of that state's Rule 609:

[D]efendant contends that "dishonesty," as used in the rule, is limited to *crimen falsi*, namely, fraud, perjury and similar offenses.

While there is some support for defendant's position in some federal cases, courts of some states have defined "dishonesty" in a much broader sense so as to include theft offenses. Although there is some suggestion of limitation in the Staff Notes to the rule, it is inconceivable that the drafters of the rule would not have been more precise and used more limiting language, such as *crimen falsi* or fraud, had such a limitation been intended, rather than using the much broader term "dishonesty." Clearly and undisputedly, a theft is inherently dishonest. Common sense dictates that stealing is a dishonest act. While dishonesty also includes deceit, it is not limited thereto.... Since a theft offense could be used to impeach under the common law, and in common parlance theft involves dishonesty, we are constrained to the common-sense conclusion that dishonest acts such as receiving stolen property and stealing are included within the meaning of the word "dishonesty," as used in Evid. R. 609(A)(2).

*Id.* at 629 (citations omitted). *See also State v. Rogers,* No. 77723, 2000 WL 1714912, at *3 (Ohio Ct.App. Nov. 16, 2000) ("Ohio courts have consistently held that theft, robbery and aggravated robbery are crimes of dishonesty and, therefore, a conviction for theft can be used for impeachment."); *State v. Tolliver,* 33 Ohio App.3d 110, 514 N.E.2d 922 (1986) (theft offenses are crimes of dishonesty within meaning of Rule 609 and may be used to impeach credibility of witness).

*State v. Goad,* 692 S.W.2d 32 (Tenn.Crim.App.1985), a case decided by the Court of Criminal Appeals of Tennessee, is particularly instructive:

The defendant's contention that a previous armed robbery conviction cannot be used for the purposes of impeachment because it is not a crime involving dishonesty is without merit or support in the law of this state.

In *State v. Fluellen,* 626 S.W.2d 299 (Tenn.Crim.App. 1981), this Court held that armed robbery could be used to test the credibility of a testifying defendant because it was a form of larceny, a crime which involves dishonesty. The

Supreme Court of this State held in *State v. Martin,* 642 S.W.2d 720 (Tenn.1982), that a conviction for an attempt to commit armed robbery fell within the dishonesty classification.

. . . .

To convince us that armed robbery is not a crime of dishonesty, the defendant cites us to *United States v. Smith,* 551 F.2d 348 (D.C.Cir.1976), which held that armed robbery is not admissible for impeachment purposes because it does not involve dishonesty. We think that Court failed to recognize an essential element of armed robbery or an attempt to commit the offense. An essential element of robbery is that the perpetrator of the offense steals the goods and chattels of another or, in the case of an attempt to commit robbery, intends to steal the goods or chattels of the person assaulted. If this element is not present, the crime is not robbery or an attempted robbery. Stealing is defined in law as larceny. Larceny involves dishonesty. The fact that the perpetrator of the crime manifests or declares his dishonesty by brazenly committing the crime does not make him an honest person. We hold, as has been previously held, that convictions for these offenses are admissible in this state for impeachment purposes.

*Id.* at 37; *see also State v. Galmore,* 994 S.W.2d 120, 122 (Tenn.1999) ("Robbery is a crime involving dishonesty and may be used for impeachment purposes."); *State v. Caruthers,* 676 S.W.2d 935 (Tenn.1984) (armed robbery involves dishonesty).

Appellate entities in Washington have likewise recognized that robbery is a crime involving dishonesty. The Court of Appeals of Washington illuminated:

Although robbery involves assaultive behavior, it also involves theft. We see no merit to the argument that a person's propensity to give false testimony may be shown only by instances of past lying; for it is a fact of life that in many situations, actions speak more loudly than words. Robbery is not considered an "honest" endeavor by society and is not so viewed by this court.... [W]e hold that robbery is a crime involving dishonesty. As such, the defendant's conviction was admissible for impeachment purposes

under the plain language of ER 609(a)(2) and the trial court did not err in so ruling in response to the defendant's motion in limine at the outset of the trial.

*State v. Turner*, 35 Wash.App. 192, 665 P.2d 923, 925 (1983). In a later case holding that robbery was a crime involving dishonesty and, thus, admissible under Rule 609(a)(2), the Court of Appeals of Washington declared "[t]he taking of the property of another whether by stealth, subterfuge, fraud or by threat or force is dishonest and bears on the credibility of an accused." *State v. Saldano*, 36 Wash.App. 344, 675 P.2d 1231, 1235 (1984). *See also State v. Rivers*, 129 Wash.2d 697, 921 P.2d 495, 498 (1996) ("Two of Defendant Rivers' prior crimes, robbery and attempted robbery, involved dishonesty and therefore were per se admissible for impeachment purposes under [Rule] 609(a)(2)."); *State v. Brown*, 113 Wash.2d 520, 782 P.2d 1013, 1031 (1989), *opinion corrected on other grounds*, 787 P.2d 906 (Wash.1990) ("[W]e include robbery as per se admissible under [Rule] 609(a)(2) because it is not purely an assaultive crime, but also involves the larcenous taking of property.").

Courts in Florida, Mississippi, New Mexico, Oregon, and Pennsylvania have held that robbery is a crime of dishonesty within the meaning of Rule 609(a)(2). *See, e.g., State v. Page*, 449 So.2d 813 (Fla.1984) (finding that any offense falling within the scope of Chapter 812, which deals with "Theft, Robbery, and Related Crimes," of the Florida Statutes, necessarily involves "dishonesty" so as to bring any conviction for such crime within the scope of Florida's version of Rule 609(a)(2)); *Ruttley v. State*, 746 So.2d 872 (Miss.Ct.App.1998) (pointing out that robbery conviction may be introduced pursuant to M.R.E. 609(a)(2) as crime of "dishonesty" for purpose of impeaching defendant's credibility as witness in his own behalf); *State v. Day*, 94 N.M. 753, 617 P.2d 142 (1980) (noting cross-examination of defendant concerning prior robbery conviction was permissible under Rule 609 in light of fact that robbery involves dishonesty); *State v. Sims*, 298 Or. 360, 692 P.2d 575, 576 (1984) (stating "[a]rmed robbery is a crime involving dishonesty and is relatively high on the credibility scale"; rule is similar to South Carolina rule); *Commonwealth v. Strong*, 522 Pa. 445, 563 A.2d 479 (1989) (holding Commonwealth may use robbery conviction to impeach defendant's

credibility because robbery involves element of dishonesty); *Commonwealth v. Jackson,* 385 Pa.Super. 401, 561 A.2d 335 (1989), *aff'd,* 526 Pa. 294, 585 A.2d 1001 (1991) (finding trial court properly allowed defendant to be impeached with his prior conviction for robbery because robbery is deemed to be a crime that involves dishonesty).

On the other hand, appellate courts in Minnesota, North Dakota, Utah, and West Virginia have determined that a prior conviction for robbery is *not* automatically admissible under Rule 609(a)(2). *See, e.g., State v. Sims,* 526 N.W.2d 201 (Minn.1994) (stating that prior convictions for robbery and aggravated robbery did not directly involve dishonesty and false statement, so as to make evidence of such prior offenses automatically admissible for impeachment purposes under Rule 609(a)(2); rather, offenses were admissible in trial court's discretion under Rule 609(a)(1)); *State v. Bohe,* 447 N.W.2d 277 (N.D.1989) (making clear that conviction for armed robbery does not necessarily indicate a propensity toward testimonial dishonesty and is not automatically admissible under Rule 609(a)(2)); *State v. Lanier,* 778 P.2d 9 (Utah 1989) (finding defendant's prior conviction for robbery was not crime of "dishonesty or false statement" within meaning of Rule 609(a)(2), unless it was committed by fraudulent or deceitful means bearing directly on the defendant's likelihood to testify truthfully); *State v. Morrell,* 803 P.2d 292 (Utah Ct.App.1990) (declaring that crime of robbery does not automatically qualify for admission under Rule 609(a)(2)); *State v. Rahman,* 199 W.Va. 144, 483 S.E.2d 273 (1996) (noting that robbery is not a per se crime of dishonesty; evidence that a witness has been convicted of a crime is admissible for purpose of impeachment under Rule 609 when underlying facts show crime involved dishonesty or false statement).

### C. Is Armed Robbery a Crime of Dishonesty Under Rule 609(a)(2), SCRE?

The Court of Appeals, in *State v. Shaw,* 328 S.C. 454, 492 S.E.2d 402 (Ct.App.1997), previously determined shoplifting was a crime of dishonesty for purposes of Rule 609(a)(2), SCRE. The Court concluded:

Although we are aware that some federal courts have held a defendant may not be impeached on a prior shoplift-

ing conviction, we prefer to align ourselves with those state courts that hold shoplifting to be a crime that involves dishonesty *per se.* Common sense tells us that anyone who, in violation of the shoplifting statute, takes and carries away a storekeeper's merchandise with intent to deprive the owner of its possession without paying for it, or alters or removes a label or price tag in an attempt to buy a product at less than its value, or transfers merchandise from its proper container for the purpose of depriving a storekeeper of its value acts dishonestly. We, therefore, hold a prior conviction for shoplifting can be used to impeach a witness under Rule 609(a)(2), SCRE. *See Webster's New Universal Unabridged Dictionary* 525 (Deluxe 2d ed.1983) (defining the word "dishonesty" to mean "deceiving, stealing, etc.").

*Id.* at 456–57, 492 S.E.2d at 403–04 (footnotes omitted).

▬▬▬ Armed robbery occurs when a person commits robbery either while armed with a deadly weapon or while the person was alleging he was armed and was using a representation of a deadly weapon. S.C.Code Ann. § 16–11–330 (Supp. 2001). Our statutory scheme provides that the crime of robbery is defined by the common law. *See* S.C.Code Ann. § 16–11–325 (Supp.2001). Robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear. *State v. Parker,* 351 S.C. 567, 571 S.E.2d 288 (2002); *Joseph v. State,* 351 S.C. 551, 571 S.E.2d 280 (2002). "The common-law offense of robbery is essentially the commission of larceny with force." *State v. Brown,* 274 S.C. 48, 49, 260 S.E.2d 719, 720 (1979). Larceny is the felonious taking and carrying away of the goods of another against the owner's will or without his consent. *See Broom v. State,* 351 S.C. 219, 569 S.E.2d 336 (2002); *State v. Condrey,* 349 S.C. 184, 562 S.E.2d 320 (Ct. App.2002). To convict of larceny, the State must show the defendant took the property and carried it away with intent to steal it. *State v. Posey,* 88 S.C. 313, 70 S.E. 612 (1911). "In common parlance[,] larceny is just plain stealing." *State v. Roof,* 196 S.C. 204, 209, 12 S.E.2d 705, 707 (1941); *see also Gill v. Ruggles,* 95 S.C. 90, 78 S.E. 536 (1913) (noting that "stealing" is the popular word for the technical word "larceny").

■  We find the same logic by which we recognized shoplifting to be a crime of dishonesty applies to armed robbery. It is the larcenous element of taking property of another which makes the action dishonest. Larceny is a lesser-included offense of armed robbery. *See State v. Parker*, 351 S.C. at 570–71, 571 S.E.2d at 290; *State v. Austin*, 299 S.C. 456, 385 S.E.2d 830 (1989). Larceny is also implicit within the crime of shoplifting.

■  To restrict the application of Rule 609(a)(2) only to those offenses which evidence an element of affirmative misstatement or misrepresentation of fact would be to ignore the plain meaning of the word "dishonesty." "Dishonesty" is, by definition, a " 'disposition to lie, cheat, or **steal.**' " *United States v. Papia*, 560 F.2d 827, 845 (7th Cir.1977) (citing *Random House College Dictionary* 380 (abr. ed.1973)) (emphasis added); *see also Webster's New Twentieth Century Dictionary* 525 (2d ed.1983) (defining "dishonesty" as "deceiving, **stealing,** etc.") (emphasis added). "To be dishonest means to deceive, defraud or **steal.**" *State v. Saldano*, 36 Wash.App. 344, 675 P.2d 1231, 1236 (1984) (citing *Oxford English Dictionary* (1969)) (emphasis added). *See also Gregory v. State*, 616 A.2d 1198, 1204 (Del.1992) (defining the term "dishonesty" as "the act or practice of lying, deceiving, cheating, **stealing** or defrauding.") (emphasis added). " 'In common human experience[,] acts of deceit, fraud, cheating, or **stealing** . . . are universally regarded as conduct which reflects adversely on a man's honesty and integrity.' " *Bogard v. State*, 624 So.2d 1313, 1317 (Miss.1993).

We hold that armed robbery is a crime of dishonesty under Rule 609(a)(2). In concluding armed robbery is a crime of dishonesty under Rule 609(a)(2), we are in agreement with the majority of other state courts which have considered the question of whether robbery is a crime of dishonesty for purposes of Rule 609(a)(2).

### D.  No Requirement of Probative Value/Prejudicial Impact Analysis under Rule 609(a)(2)

Having concluded that armed robbery is a crime of dishonesty under Rule 609(a)(2), SCRE, we consider whether there is any requirement for the court to engage in a probative

value/prejudicial impact analysis. Rule 609(a)(1) mandates for non-"dishonesty crimes" that, prior to admission, the court must determine the probative value outweighs prejudicial effect to the accused.

Rule 609(a)(2), by contrast, clearly limits the discretion of the court by mandating the admission of crimes involving dishonesty without any determination as to a balancing test. *See United States v. Morrow,* 977 F.2d 222 (6th Cir.1992).

Commentators have stated that "[t]he court *must* admit evidence that a witness has been convicted of a crime that involved dishonesty." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 609.04[1] (Joseph M. McLaughlin, ed., 2d ed.2002) (emphasis added). "[M]ost courts held that the trial court lacks discretion under Rule 403 to exclude crimes of dishonesty. Thus, an opponent has the absolute right to impeach a witness by introducing a prior conviction involving dishonesty." *Id.; See, e.g., United States v. Kuecker,* 740 F.2d 496 (7th Cir.1984) (under Federal Rule of Evidence 609(a)(2), any prior conviction involving dishonesty is admissible to impeach witness's credibility without recourse to Rule 403 balancing); *see also* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 42, at 159–60 (John W. Strong ed., 5th ed. 1999) ("Crimes involving 'dishonesty or false statement,' . . . do not require balancing of probative value against prejudice; under 609(a)(2), they are automatically admissible."). "A conviction that does not involve dishonesty . . . *may* be admitted only after the court has performed the appropriate balancing test." *Weinstein's Federal Evidence,* § 609.04[1] (emphasis added).

We hold Rule 609(a)(2) provides for automatic admission of evidence of a prior crime of dishonesty without the balancing of probative value against prejudicial effect. This conclusion is supported by the juxtaposition of Rule 609(a)(1) and Rule 609(a)(2). There is absolutely *no* language in Rule 609(a)(2) compelling a balancing test for admission in regard to a crime of dishonesty.

While crimes punishable by death or imprisonment in excess of one year require the court to determine whether the probative value of such evidence outweighs the prejudicial effect, no such balancing need occur when the crime is one

involving dishonesty or false statement. These crimes are automatically admissible for impeachment purposes because they have the greatest probative value on the issue of truth and veracity.

In the instant case, the trial court did not err in admitting Al–Amin's prior armed robbery conviction without making a determination that the probative value outweighed the prejudicial effect. This balancing test was not required because armed robbery is a crime of dishonesty within the meaning of Rule 609(a)(2).

### III. Third Party Guilt

Al–Amin contends he is entitled to a new trial because the Circuit Court erred when it excluded evidence that (1) James Conyers, who lived in the apartment with the victim, had been evicted; and (2) DNA testing had excluded Al–Amin as a source of DNA obtained from a sperm fraction that had been taken from the victim. Al–Amin maintains the Circuit Court's exclusion of this evidence deprived him of his right to present a defense. We disagree.

In the instant case, Al–Amin sought to admit the proffered testimony of Officer Joe Philip Smith. Al–Amin wished to establish that Conyers had been evicted. During the proffer, in addition to testifying regarding the living situation of Conyers and the victim, Officer Smith stated that the first place the police look for a suspect, once a murder victim has been identified, is "in her immediate family or immediate surroundings." The judge excluded this testimony.

Thereafter, Al–Amin sought to present evidence that DNA testing demonstrated Al–Amin was excluded as the source of DNA obtained from a sperm fraction on a vaginal slide taken from the victim. The court allowed a proffer, but excluded the evidence.

This Court addressed the issue of third party guilt in *State v. Mansfield*, 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000). Mansfield was charged with attempted first degree burglary and sought to introduce evidence that another man who lived in the apartment complex where the defendant was found and was home that day also matched the victim's description of the person who committed the crime. In upholding the Circuit

Court's decision to exclude the evidence, the Court of Appeals held:

> Our Supreme Court has imposed strict limitations on the admissibility of third-party guilt. Evidence offered by a defendant as to the commission of the crime by another person is limited to facts which are inconsistent with the defendant's guilt. The evidence must raise a reasonable inference as to the accused's innocence.

*Id.* at 81, 538 S.E.2d at 265 (citations omitted). The Court concluded:

> [The proffered] evidence casts a mere "bare suspicion" on [the other man]. The fact that [the other man] generally fit the description of the perpetrator and lived in the apartment complex does not show his guilt, nor is it inconsistent with [the defendant's] guilt. Because the evidence was not inconsistent with [the defendant's] own guilt, the trial court exercised sound discretion in excluding it.

*Id.* at 85–86, 538 S.E.2d at 267.

The *Mansfield* Court discussed *State v. Gregory*, 198 S.C. 98, 16 S.E.2d 532 (1941), which articulated:

> [T]he evidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. . . . But before such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party. Remote acts, disconnected and outside the crime itself, cannot be separately proved for such a purpose. An orderly and unbiased judicial inquiry as to the guilt or innocence of a defendant on trial does not contemplate that such defendant be permitted, by way of defense, to indulge in conjectural inferences that some other person might have committed the offense for which he is on trial, or by fanciful analogy to say to the jury that someone other than he is more probably guilty.

*Id.* at 104–05, 16 S.E.2d at 534–35 (internal quotations and citations omitted).

Here, the trial judge did not err in excluding this testimony. There is no evidence tying Conyers to the murder other than the fact that he and the victim were roommates. Testimony regarding whether Conyers had been evicted was not relevant. Furthermore, information as to where the police generally begin looking for perpetrators in a homicide investigation is irrelevant to Al–Amin's guilt and, at most, would merely cast a "bare suspicion" upon Conyers. The evidence Al–Amin sought to admit does not show Conyers's guilt nor is it inconsistent with Al–Amin's culpability and presents an even weaker case for admissibility than the evidence in *Mansfield.* Moreover, by Al–Amin's own admission, he was in the victim's immediate surroundings on the date of her death.

Additionally, the refusal by the court to admit negative DNA evidence concerning sperm in the victim and the fact that the sperm did not belong to Al–Amin was proper. There was no assertion that the victim was sexually assaulted by the perpetrator. In his brief, Al–Amin alleges the fact that a crack pipe was recovered from the victim's crotch area "made it reasonable to infer that there was a sexual component to the crime" and that evidence excluding Al–Amin as the sperm donor was relevant and reasonably indicated his innocence. This assertion is implausible and conjectural.

The evidence offered by Al–Amin was not inconsistent with his own guilt, nor did it raise a reasonable inference or presumption as to Al–Amin's innocence. The trial judge exercised sound discretion in excluding it.

## CONCLUSION

Accordingly, based on the foregoing reasons, Al–Amin's conviction is

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.