Screening Report / Proposed Opinion

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Alexander Mickle, Appellant.
 
 
 

Appeal From Charleston County
  Deadra L. Jefferson, Circuit Court Judge

Unpublished Opinion No. 2005-UP-557
Submitted September 1, 2005  Filed October 17, 2005   

AFFIRMED

 
 
 
Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.
Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General W. Rutledge Martin, of Columbia, and Solicitor Ralph E. Hoisington, of Charleston, for Respondent.
 
 
 

PER CURIAM:  Alexander Mickle appeals a conviction for first-degree burglary arguing the trial court erred in admitting evidence of twelve prior burglary convictions in the States case in chief.  We affirm.
FACTS
On March 22, 2003, Ramzi Ahmed and his roommate, Hafez Muharad, decided to relax after work by shooting pool at a local bar.  After spending a couple of hours so occupied, they returned to their Meeting Street apartment in Charleston sometime around 2:00 a.m.  As they approached the residence, they noticed a car parked across the street and a man standing by the car closing the trunk.  About the same time, the roommates noticed that the front door to their apartment was open.  
Suspecting foul play, they walked over to the car and noticed several of their belongings were inside.  After being confronted, the driver of the car, who was later identified as Alexander Mickle, quickly jumped in the car and attempted to leave the scene.  Before he could do so, however, Ramzi Ahmed reached into the car and took the keys out of the ignition.  Having prevented Mickle from leaving, Ramzi and Hafez called 911.  When Mickle noticed the police were being called, he began to take their belongings out of the car and return them to the apartment.[1]  
Ramzi Ahmed testified that after Mickle returned the items to the home, he tried to get the roommates to let him leave, stating that since they once again had their belongings no harm was done.  When the police arrived a short time later, Mickle was still at the residence.  After talking to the roommates, the officer attempted to talk to Mickle alone near his patrol car.  Because Mickle was acting agitated and nervous the officer decided to conduct a protective pat-down search to ensure Mickle was not carrying a weapon.  
When the officer attempted to search Mickles waist area, Mickle reached into his waistband and produced a tire iron.  As he raised the tire iron, the officer grabbed Mickle in a bear hug and the two struggled until the tire iron was dropped.  The officer told Mickle to stop resisting or he would release his canine.  Mickle, however, broke free and began to flee the scene.  The officer then released his canine and a short time later Mickle was subdued.  On Mickles person, the officer found a copy of the Holy Koran, which belonged to Hafez
Muharad.  
Having secured Mickle, the officer did a survey of the house and noticed that the apartment was in a state of disarray, and that the victims property was strewn all over.  He further observed pry marks between the door and the doorframe where the house was broken into.  When the crime scene was processed a short time later, a number of fingerprints were lifted from various items in the house and molds were taken of the pry marks on the doorframe.  
At trial, an officer testified that Mickles fingerprint was found on a cigar box, which allegedly was one of the items that Mickle returned to the house after the victims returned home.  Another officer testified that the pry marks were consistent with the tire iron found on Mickles person that evening. 
Mickles defense consisted of his testimony that earlier in the evening on the night in question, he met a man at a local bar whom he called Brother Man, until he later found out his name was either Nookie or Rookie.  Mickle stated that he talked to this man for a while at the bar about working for him in his contracting business.  They left the bar around 1:30 a.m. at which time Mickle decided he would help this man pick up some of his belongings.  They went to what Mickle thought was the mans home and Mickle testified that he sat in the car while the man made trips to and from the house loading the car with various items.  Mickle stated that he became suspicious of him after he began slamming the trunk and asking whether Mickle was interested in purchasing some of the items.  Sensing that Mickle was suspicious, he walked away shortly before the homes actual residents arrived.  
Following trial, the jury convicted Mickle of burglary in the first degree, assault of a high and aggravated nature, grand larceny and assault while resisting arrest.         
LAW / ANALYSIS
Mickle argues the trial court erred in allowing the state to introduce evidence of twelve prior burglary convictions in its case in chief to support the charge of burglary in the first degree. 
Burglary in the first degree is defined by statute as follows:

 
 
 
 (A) 
 A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and either:
 
 
 
 (1) 
 when, in effecting entry or while in the dwelling or in immediate flight, he or another participant in the crime:
 
 
 
 
 
 
 
 (a) 
 is armed with a deadly weapon or explosive; or
 
 
 (b) 
 causes physical injury to a person who is not a participant in the crime; or
 
 
 (c)
 uses or threatens the use of a dangerous instrument; or
 
 
 (d) 
 displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or
 
 
 
 
 
 
 (2) 
 the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or
 
 
 
 (3) 
 the entering or remaining occurs in the nighttime.
 
 
 

. . . .
S.C. Code Ann. § 16-11-311 (2003).
To support the first-degree burglary charge, the State relied on both the fact that entry occurred in the nighttime and that Mickle had a record of two or more burglary convictions.  In fact, Mickle had twelve prior burglary convictions, four for grand larceny, five for receiving stolen goods, and one conviction for breaking and entering of a motor vehicle.  
In a pre-trial conference, Mickle objected to the use of all twelve burglary convictions.  Specifically, defense counsel asked that all of the burglary convictions be excluded based on State v. Lyle, 125 S.C. 406, 118 S.E. 803 (1923), Rules 609 and 404(b) of the South Carolina Rules of Evidence, and fundamental fairness concerns.  In the alternative, counsel asked that the number of convictions admitted be limited to two.
After hearing arguments from both sides, the trial court ruled that based on State v. Cheatham, 349 S.C. 101, 561 S.E.2d 618 (Ct. App. 2002) and State v. James, 346 S.C. 303, 551 S.E.2d 591 (Ct. App. 2002), the State could not be required to limit the number of burglary convictions used because the statute does not contain such a restriction.  The court further held that because it would issue a curative instruction informing the jury of the limited purpose of the convictions, Mickle would not be prejudiced by their admission.  
Prior to this ruling, Mickle informed the court that should it rule against him, he would enter into a stipulation with the State as to the existence of all 12 burglaries.  Accordingly, during the States case in chief, a stipulation was read into evidence outlining Mickles prior convictions for burglary.  As such, Mickle did not object at the time the convictions were entered into the record.  
Although Mickles position is supported by our supreme courts ruling in State v. James, 355 S.C. 25, 583 S.E.2d 745 (2003) (overruling this courts decision in State v. James, 346 S.C. 303, 551 S.E.2d 591 (Ct. App. 2002) and holding admission of seven prior burglary convictions was error where the trial court did not conduct an analysis to determine whether the probative value of said convictions outweighed their prejudicial effect), he failed to preserve the issue for our review.  It is well settled that a motion in limine to exclude evidence at the start of trial does not preserve an issue for review unless the moving party makes a contemporaneous objection when the evidence is introduced.  See e.g., State v. Wood, 362 S.C. 520, 526, 608 S.E.2d 435, 438 (Ct. App. 2004).  Rather than object when the convictions were offered, Mickle stipulated to their existence; as such, we find the issue to be unpreserved.
Even if the issue was correctly preserved, it would fail on the merits.  Although the trial court in the current case failed to conduct an analysis as required by our supreme courts decision in James, considering the significant amount of evidence against Mickle, we find any error by the trial court was harmless.  See State v. Keenon, 356 S.C. 457, 459, 590 S.E.2d 34-5 (2003) (finding that because of the overwhelming evidence of petitioners guilt . . . the admission of more than two prior convictions was harmless error.).
Mickle also argues the trial court erred in failing to conduct an analysis to determine if admission of Mickles prior crimes would be more prejudicial than probative before admitting them under 609(a)(2), SCRE.  We disagree.
Rule 609, SCRE reads as follows: 

(a) General Rule.  For the purposes of attacking the credibility of a witness, 
(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Significantly, Mickle does not dispute whether the convictions admitted were crimes of dishonesty.  Mickles sole argument is that the trial court should have conducted a prejudicial analysis before admitting the convictions for impeachment purposes. 
In State v. Al-Amin, 353 S.C. 405, 578 S.E.2d 32 (Ct. App. 2003) we addressed this precise issue.  After deciding in that case that armed robbery was a crime of dishonesty under Rule 609(a)(2), we articulated the following holding:

Rule 609(a)(2) provides for automatic admission of evidence of a prior crime of dishonesty without the balancing of probative value against prejudicial effect.  This conclusion is supported by the juxtaposition of Rule 609(a)(1) and Rule 609(a)(2).  There is absolutely no language in Rule 609(a)(2) compelling a balancing test for admission in regard to a crime of dishonesty.

Al-Amin at 426, 578 S.E.2d at 43.  Accordingly, we find the trial court did not err in allowing admission of Mickles prior crimes of dishonesty.
 AFFIRMED. [2]
ANDERSON, J., HUFF and WILLIAMS, JJ., concur.

[1] Hafez Muharad testified that the value of the items taken was approximately $2,000 and included, inter alia, two radios, three jackets, shoes, a suit, binoculars, and a compact disc player.  
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.